**Romeo J. HEBERT, Plaintiff,**

v.

**Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Defendant.**

**Docket No. 760.**

United States District Court
D. Montana,
Butte Division.

Oct. 3, 1963.

**534**

Moody Brickett, U. S. Atty., Butte, Mont., for defendant.

John T. Mullany, Butte, Mont., for plaintiff.

MURRAY, Chief Judge

This action is brought under the provisions of Title 42 U.S.C.A. § 405(g) to review a final decision of the Secretary of Health, Education and Welfare denying plaintiff's application for disability insurance benefits and a period of disability under the Social Security Act (42 U.S.C.A. §§ 423(a) and 416(i).

Plaintiff filed his application on December 13, 1957, at which time he concededly met the quarters of coverage requirements of the Act. In his application, he stated he became unable to work on May 13, 1957, because of rheumatoid arthritis and a nervous disorder. When his application was denied, plaintiff requested a hearing, which request was granted and the hearing held on June 23, 1959. The Referee or Hearing Examiner rendered his decision on August 26, 1959, denying plaintiff's application, and upon the denial by the Appeals Council of plaintiff's request for review of the Hearing Examiner's decision, this action was commenced in this court on April 14, 1960, to review the final decision of the Secretary.

Prior to filing his answer, the defendant made a motion to remand the case to the Secretary for further administrative action. The motion was granted and the case remanded. Upon remand the action of the Appeals Council of December 18, 1959, denying plaintiff's request for review of the Hearing Examiner's decision was vacated, additional evidence was gathered by the Appeals Council, and the Appeals Council rendered its decision on September 28, 1962, denying plaintiff's application for a period of disability and disability insurance benefits, and affirming the decision of the Hearing Examiner. The decision by the Appeals Council became the final decision of the Secretary, and the case is back once again in this court for review of that final decision.

In order to be eligible for a period of disability under 42 U.S.C.A. § 416(i) and for disability insurance benefits under 42 U.S.C.A. § 423, the plaintiff must establish that he is unable to engage in any substantial gainful activity by reason of a medically determinable

physical or mental impairment which can be expected to result in death or to be of long continued and indefinite duration and that such disability had its onset prior to the filing of the application and at a time when plaintiff met the "quarters of coverage" requirements set forth in 42 U.S.C.A. §§ 416(i) (3) and 423 (c) (1).

Under the statute, the burden rested on the plaintiff to prove that he met the conditions of eligibility fixed by the Act before he would be entitled to the benefits for which he applied. 42 U.S.C.A. § 416(i) (1), 42 U.S.C.A. § 423 (c) (2). Furthermore, in this proceeding before the court, the decision of the Secretary, if supported by substantial evidence, is conclusive and must be affirmed. 42 U.S.C.A. § 405(g). "Substantial evidence" is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Consolidated Edison Co. of New York v. National Labor Relations Board, 305 U. S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126; N. L. R. B. v. Columbian Enameling & Stamping Co., 306 U.S. 292, 59 S. Ct. 501, 83 L.Ed. 660; Aaron v. Fleming, D.C., 168 F.Supp. 291, 294. The question of what amounts to substantial evidence is a matter of law for the reviewing court to determine upon a considered evaluation of the whole record. Hayes v. Celebrezze (C.A. 5, 1963) 311 F.2d 648, 651.

The requirement that applicant's disability arises from a physical or mental impairment which had its onset prior to the filing of the application is important in this case because the record herein shows that in August, 1959, approximately 20 months subsequent to the filing of his application under the Social Security Act, the plaintiff was found to have silicosis of sufficient severity to entitle him to silicosis benefits under Montana law. Silicosis is a disease that generally develops over a long period of time, and it is, therefore, likely that plaintiff must have been somewhat afflicted there-

by on December 13, 1957, when he filed his application for benefits under the Social Security Act. However, it is clear from all the evidence that any disability from which plaintiff may have been suffering at the time he filed his application was not in any way associated with his silicosis. At that time he neither displayed nor complained of any symptoms, such as shortness of breath, productive cough or tightness and pain in the chest, which are expected with disabling silicosis. Moreover, as late as 1961, pulmonary function tests and blood gas studies to determine the extent of any pulmonary impairment were performed on plaintiff and found to be essentially within normal limits. Therefore, insofar as the Appeals Council's decision finds no disability within the meaning of the Act caused or contributed to by silicosis as of the time of the filing of the application, it is supported by substantial evidence.

The conditions or impairments which plaintiff listed on his application as causing his disability, as noted before, were rheumatoid arthritis and a nervous disorder. There is abundant evidence in the record to establish that plaintiff does in fact suffer with these afflictions, and the Appeals Council so concluded. With respect to the rheumatoid arthritis, the Appeals Council's conclusion was as follows:

"The Appeals Council must conclude that although the claimant does have rheumatoid arthritis, productive of some pain and discomfort, the evidence does not show that it has effected the musculoskeletal functions to the point where he is unable to walk, stand, bend, stoop or use his arms, hands, and fingers. It appears that he not only has almost complete use of all of the joints of the body but employment in this case might very well be beneficial."

Its conclusion with respect to the nervous condition is as follows:

"From the foregoing, the Appeals Council concludes that, on or before

December 13, 1957, or even currently, the claimant did not have a nervous condition severe enough to preclude him from engaging in substantial gainful activity. The evidence shows that the only manifestation of the alleged nervous disorder is the tendency to magnify his complaints. Considering the length to which he has gone to establish entitlement to the benefits herein sought, including having himself confined in a tuberculosis sanitorium, it would not be unreasonable to conclude that his tendency to exaggerate his complaints have been motivated to a very great extent by the desire to obtain these benefits."

With reference to plaintiff's symptoms, the Appeals Council had this to say:

"All this is not meant to exclude from consideration the subjective symptoms of the individual. *However, these must be evaluated in light of the extent to which they are substantiated by the objective evidence,* as well as the overall credibility of the claimant, keeping in mind that in a claim for monetary benefits exaggeration of complaints and symptoms is a distinct possibility.

"In the instant case the claimant's subjective symptoms have at times been severe. However, the objective evidence, including the findings on physical and psychiatric examinations, X-rays and laboratory studies, fail to substantiate the allegations of severe joint pain and stiffness. At least one physician has commented that the complaints were out of all proportion to the degree found on examination. Two others felt that his complaints were so exaggerated in comparison to the objective findings that they ascribed the symptoms to a psychosis or psychoneurosis. There is also evidence which casts considerable doubt on the overall credibility of the claimant. He informed the examiner at the tuberculosis sanitorium that he had suffered a nervous breakdown about 4 or 5 years ago, had a slight stroke sometime in 1961, and had suffered three heart attacks. There is no evidence in the file to substantiate any of these allegations. *Moreover, the objective evidence fails to show that he is suffering from severe, disabling, intractable pain.* This is not to deny that he does suffer from pain and discomfort arising out of his arthritic condition. However, the evidence shows that this pain flares up only occasionally, and recent reports indicate that it is adequately relieved and controlled by medication without adverse effect on his nervous condition. The presence of pain, unless it has become severe and intractable or has resulted in marked bodily dysfunction, is not incompatible with the ability to work."

These latter observations of the Appeals Council indicate that in this case, as in the two recent cases of Hayes v. Celebrezze, 311 F.2d 648 (C.A. 5, 1963) and Page v. Celebrezze, 5 Cir., 311 F.2d 757, too great importance was attached to objective symptoms, and too little attention paid to subjective symptoms. In the Hayes case, supra, at page 654 of 311 F.2d the court stated:

"But the statute does not require that disability or its cause be 'substantiated objectively.' Of course it must be 'by reason of any medically determinable physical or mental impairment.' But modern medicine is neither so scientific nor so helpless today that it either does, or must, evaluate only objective factors."

In the Page case, the court stated, at pages 762 and 763 of 311 F.2d:

"If pain is real to the patient and as such results in that person being physically unable to engage in any gainful occupations suited to his training and experience, and this results from 'any medically determinable physical or mental impairment' the disability entitles the person to the statutory benefits even

though the cause of such pain cannot be demonstrated by 'objective clinical and laboratory findings.' We are dealing with such a case here. This is not the simple case of a person complaining of pain for which none of the doctors can find any basis, either organic or neurotic. Here we are dealing with a person about whom there is almost substantial agreement that she is disabled in fact by reason of psychosomatic or psychoneurotic involvements.

\*   \*   \*   \*   \*   \*

"The use by Congress of the terms 'physical or mental' impairment is more than enough proof to indicate that in this contemporary legislation Congress knew about the existence and work of that branch of medical science which deals with the aberrations of the human mind and emotions. It was aware that this phase of medicine often finds scientific basis for the existence of real and distressing, disabling pain unaccompanied by even the slightest demonstrable organic defect. In rejecting the idea that pain genuinely held, felt and experienced has to be substantiated objectively to satisfy the statutory standard of a 'medically determinable physical or mental impairment,' we have just recently said: 'But modern medicine is neither so scientific nor so helpless today that it either does, or must, evaluate only objective factors.' "

In this case the plaintiff testified to his inability to work caused by pain from his arthritis, weakness in his joints and a feeling of nervousness and fatigue. In this he was corroborated by his wife. As to his nervous or mental condition, there was a history of mental difficulties in his family. His mother, although never confined to an institution suffered with a mental condition all of her life. One of his brothers, at the time of the hearing, had been confined to a mental institution for a depressive psychosis for some 10 years, and another brother having committed suicide in a fit of de-

pression. Plaintiff himself had undergone psychiatric treatment in Los Angeles in 1928, and had some treatment for a nervous or mental disorder in 1943, apparently at Sacramento, California, and again at a later time in Wyoming. The transcript of the hearing contains numerous parenthetical references to nervousness, restlessness and breaking down on the part of plaintiff at the hearing. Plaintiff also testified to his inability to hold a job as janitor which he secured after 1957 due to pain, nervousness and fatigue.

The only evidence in the record by a psychiatrist concerning plaintiff's condition is a report by Dr. G. V. Holmes of an examination of December 27, 1957, very close to the date of filing the application, in which Dr. Holmes made a diagnosis of "depressive reaction". However, this report contains no comment as to the doctor's opinion as to the effect of the condition diagnosed upon plaintiff's disability to work.

Dr. Horst, who testified at the hearing, was a general practitioner, but had had considerable experience with mental illnesses as a member of the staff for a time at the Montana State Hospital for the Insane, and as a member of various lunacy commissions appointed by local judges. He gave as his opinion that while he couldn't find too much in the way of objective findings to substantiate plaintiff's physical complaints, that plaintiff was definitely disabled from May, 1957, as a result of a combination of his physical and mental afflictions.

Dr. Gregg, an internist, and Dr. Davidson, an orthopedist, Board-certified physicians, who examined plaintiff on behalf of the defendant, also reported that while their objective findings did not measure up to plaintiff's subjective complaints, they did note and comment on possible nervous or mental afflictions of plaintiff. Dr. Gregg's conclusion was "I feel that this patient's clinical findings are inadequate to account for any more than a very minimal disability. I believe he has a very definite psychoneurosis, probably even a psychosis. He has been un-

der the care of a psychiatrist, Dr. Holmes, of the Mental Hygiene Clinic, but we do not have a report of her findings. *His psychiatric condition may account for a very definite disability.*"

Dr. Davidson's conclusion was: "Mr. Hebert has minimal arthritic changes, but they are not severe enough to keep him from performing his normal work. He has a rather marked nervousness and is very depressed. The possibility of some emotional instability should be considered. He may benefit by being examined at the Mental Hygiene Clinic."

Dr. McGreevey, another internist, who examined plaintiff, reported that plaintiff "appears to be rather aesthemic and weak. * * * Also, his manner is that of an neurastheniac individual, and his complaints seem somewhat out of proportion to the degree of the disease found."

These medical opinions all relate to examinations made of plaintiff long after the filing of his application, and only Dr. Horst attempted to relate his findings back to the crucial date of the filing of the application. However, the significance of the reports is that while the doctors could not confirm by objective or clinical findings the subjective complaints of the plaintiff, they did not, as the Appeals Council did, disregard the complaints or decide that plaintiff was malingering for the purpose of securing benefits under the Act. Rather they indicated a feeling that perhaps the inconsistency between the complaints and objective findings was explainable in plaintiff's psychoneurotic or psychotic condition.

The Appeals Council stated "considering the length to which he has gone to establish entitlement to the benefits herein sought, including having himself confined in a tuberculosis sanitorium, it would not be unreasonable to conclude that his tendency to exaggerate his complaints have been motivated to a very great extent by the desire to obtain these benefits". This observation overlooks the fact that the record discloses that from August 3, 1952, long before this application was pending, up until the date of the application, the plaintiff made some 30 visits to the outpatient department of the Butte Community Memorial Hospital with complaints that for the most part could not be substantiated by objective findings. This apparent hypochrondia at a time when no monetary benefits were in the offing is again consistent with the opinions expressed by the doctors that plaintiff may suffer from some real psychoneurotic or psychotic difficulty.

The entire record in this case compels the conclusion that the plaintiff is definitely afflicted with a psychoneurotic or psychotic problem. While the plaintiff has produced sufficient evidence to establish a prima facie case that this condition was disabling as of the time he filed his application, it is also apparent that there no was real determination of the nature and extent of the disability flowing from this condition. The only evidence of a psychiatrist is that of Dr. Holmes, and that fails to shed any light whatsoever on the effect of the condition diagnosed on plaintiff's ability to be substantially gainfully employed. Certainly it seems that this branch of medicine could furnish evidence throwing some light on plaintiff's true condition as of the time the application was filed.

Therefore, it is ordered and this does order that this case is remanded, pursuant to the provisions of 42 U.S.C.A. § 405(g) for further administrative action in accordance with the views herein expressed.