John C. HUFF, Plaintiff,

v.

Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Defendant.

No. 1756.

United States District Court
W. D. Arkansas,
Fort Smith Division.

March 31, 1964.

Edgar A. Woolsey, Jr., J. Marvin Holman, Clarksville, Ark., for plaintiff.

Chas. M. Conway, U. S. Atty., Robert E. Johnson, Asst. U. S. Atty., Ft. Smith, Ark., for defendant.

JOHN E. MILLER, Chief Judge.

Plaintiff, John C. Huff, after having exhausted all administrative remedies, seeks review of a final decision of the defendant Secretary denying disability benefits under 42 U.S.C. § 401 et seq.

The defendant in his answer admits the plaintiff meets the special earnings requirements and has exhausted all administrative remedies, but contends that the decision of the defendant Secretary is supported by substantial evidence. The parties have submitted briefs in support of their respective contentions which have been considered by the court. The case is now before the court on cross motions for summary judgment.

The pertinent facts disclosed by the transcript, pleadings and briefs are not disputed. Plaintiff was born on November 22, 1907, and completed the sixth grade of school. At the age of 16 he left his father's farm and sought employment in the coal mines near Clarks-ville, Arkansas. He was continuously employed as a coal miner until 1951 when the coal mines in the Clarksville area were closed. During his employment as a miner he performed essentially manual labor, and on occasion operated simple mining machinery. He next worked for one year for a contractor "setting forms, helping tie steel, and pouring concrete." In 1952 he was employed by Priebe's Chicken Processing Plant at Clarksville, Arkansas. He was employed continuously at Priebe's from 1952 until 1962, when the plant was closed due to the employer's discontinuing business. Since the termination of his employment in January 1962, he has not been employed nor sought employment. The transcript discloses that his activities since that date consist of going to town, watching television, and "doing a little work around his house."

Neither is the plaintiff's medical history in dispute. Some 8 years prior to the filing of his application for disability benefits, he was struck on the forehead with a tire tool which dislodged one eye. At that time he was hospitalized and underwent a successful surgical operation which preserved the sight in his injured eye. His present complaints consist of headaches, impaired eyesight, stiffening in one arm, and shortness of breath. He presently receives no medication for any of the enumerated ailments.

Plaintiff was examined May 7, 1962, by Dr. Guy Shrigley of Clarksville, Arkansas. Dr. Shrigley in his report of May 14, 1962, stated that the patient complained of constant headaches in the area of the old injury to his right forehead, blackouts, numbness, and shortness of breath. The plaintiff's shortness of breath was found to be the result of pulmonary fibrosis. Dr. Shrigley further stated that the plaintiff's heart was regular, no murmur noted, and that he had an old traumatic scar of the right supra-orbital region.

Plaintiff was next examined by Dr. Charles F. Wilkins of the Millard-Henry Clinic, Russellville, Arkansas. In his

report of July 24, 1962, Dr. Wilkins stated:

"Physical examination: Height 65". Weight 132 pounds. Blood pressure 110/70. Respiration 20. He is a well developed, well nourished white male of approximately the stated age. The head shows a well healed laceration extending from the left portion of the forehead across the right eyebrow into the corner of the right eye. There is some retraction of the right eyelid. There is also a well healed scar on the point of the chin. The head is otherwise not remarkable. E.N.T. examination is not remarkable. The eyes show vision 20/40 o.d. and 20/30 o.s. without glasses. Ophthalmoscopic examination is not remarkable. There is no localized or generalized glandular enlargement. The thyroid is not enlarged. The chest is of normal configuration. The lung fields are clear to auscultation and percussion. The heart is not enlarged. The sounds are of good quality. There are no murmurs. The abdomen is flat. There are no masses, palpable viscera or areas of tenderness. There is no hernia. The genitalia are not remarkable. Rectal examination is not remarkable. The prostate is not enlarged. It is smooth and firm. Musculoskeletal examination shows the reflexes to be somewhat hyperactive but they are equal bilaterally. The remainder of the physical examination is not remarkable.

"Laboratory, x-ray and special examination findings: Urinalysis shows a specific gravity of 1.018. It is negative for sugar, albumin or abnormal microscopic findings. Hemoglobin is 15 gms. %. PA chest x-ray shows the bony thorax to be normal. The diaphragms are well rounded. The costophrenic angles are sharp. The cardiac contour is normal. Transthoracic diameter is 30 cms. Transcardiac diameter is 14 cms. The lung fields show a diffuse reticular fibrosis with nodular appearing densities which are typical of pneumoconiosis. Lateral chest x-ray shows moderate hypertropic changes with some spurring between the vertebral bodies. It is otherwise not remarkable. Spirometry shows the vital capacity to be 3,600 ccs. (89% of normal). One second vital capacity is 2,750 ccs. Two second vital capacity is 3,100 ccs. Three second vital capacity is 3,300 ccs. Maximum expiratory flow rate is 260 liters per minute. Maximum breathing capacity is 76 liters per minute. It is felt that this patient exhibited excellent effort and cooperation in performing these tests.

"Diagnoses: (1) Pneumoconiosis (silicosis), mild to moderate with some reduction in functional pulmonary capacity. (2) History of head injury 18 years prior to examination with no evidence of residual neurological damage.

"Discussion: I am unable to find a reason for the complaints involving the patient's left leg and right arm. Both of these would not be caused by his past head injury. Although he would notice shortness of breath on vigorous physical exertion, his pulmonary function would not prevent moderate physical exertion."

Plaintiff was again examined by Dr. Shrigley on September 11, 1962. Dr. Shrigley in his report of September 13 again stated that the plaintiff complained of shortness of breath, and further that the plaintiff indicated that he had been unable to find employment because of his physical condition. The report of the examination given on May 7 does not disclose any objective findings made by Dr. Shrigley other than a x-ray disclosing pulmonary fibrosis, which Dr. Shrigley stated accounts for the plaintiff's shortness of breath on exertion.

A consultative examination was given the plaintiff by Dr. William G. Lockhart of the Holt-Krock Clinic of Fort Smith, Arkansas, on September 28, 1962. In Dr. Lockhart's report to the Social Se-

curity Administration dated November 27, 1962, he stated:

"Examination reveals the patient to be essentially alert, clear and cooperative. I was unable to make out any specific organic mental changes. Skull: There is some scarring in the right frontal and superciliary arch area and possibly slight depression of the superciliary arch area towards the lateral portion. On the whole, the basic architecture is well maintained. There are no abnormalities in the spine noted. *CRANIAL NERVES:* Sense of smell may be equivocally diminished on the right side. The pupils are equal and react well. Funduscopic examination normal. Visual fields full to confrontation. Extraocular muscle movements full and equal. No nystagmus seen. Corneal reflexes brisk and equal. Sensation and motor ability of the face normal. Hearing acuity within normal limits. Remainder of cranial nerves are essentially intact. *SENSATION:* Intact in all its modalities. *MOTOR EXAMINATION:* Essentially normal strength, tone and volume of the musculature throughout. I was unable to bring out any specific evidence of weakness at this time. There may be a very slight weakness in the lower extremity with possibly some increase in muscle tone, but at this time this is equivocal. *REFLEXES:* Slight preponderance to reflexes on the left side as compared to the right, but no pathological reflexes. Superficial abdominal reflexes are bilaterally absent. The left cremasteric may be depressed as compared to the one on the right. No abnormalities noted on testing of coordination.

"X-rays were obtained of the skull and reviewed by myself and reported by Dr. James Snider, radiologist of Holt-Krock Clinic as follows: 'On the lateral view, it appears that a small fragment of bone has been removed from the right frontal area near the frontal sinuses. There is some increased sclerosis present about this site indicating new bone production. A fracture line is not recognized. The calvarium otherwise appears intact. The sphenoid wings and petrous ridges appear intact. The sella is of a normal size and shape. The pineal is faintly calcified and observed on the lateral view but cannot be identified on the frontal views.'

"This patient undoubtedly did sustain some degree of cerebral concussion and probable cerebral contusing at the time of his original injury. There is nothing here at the present time, however, that would tend to explain on an organic basis why he should continue to have constant headache, and this would seem to be primarily a functional complaint as of this time. The symptomatology related to the left lower extremity and right arm, I cannot see in any way that the pain would be related to the head injury. Of course, some numbness could be, but the degree of discomfort that he states he has in the left leg is not seen in brain injury.

"The patient's primary complaints seem to be overshadowed considerably by functional components, with his subjective complaints being out of proportion to his objective findings."

Plaintiff was next examined by Dr. David L. Liberman, neurosurgeon and neuropsychiatrist of Little Rock, Arkansas. In the December 17, 1962, report of Dr. Liberman to the State Department for OASI Disability Determination at Little Rock, he stated:

"Neurological Examination: Height 5' 5½", weight 130 pounds. BP 120/84, pulse 88. Pupils are equal and regular, react to light and accomodation. No nystagmus is noted and there is no constriction of the visual fields. He has an irregularly shaped scar over the right eye and exhibits tenderness to deep pressure

over the right frontal and temporal region. There is loss of sensation in the sensory distribution of the right opthalmic region of the right trigeminal nerve. He shows dullness to pin prick over both legs and feet, both upper extremities, chest and abdomen which is considered to be functional in character.

"Gait and station are normal. Romberg is negative. The knee jerks are two plus but equal. The ankle jerks and upper reflexes are brisk and equal. The abdominal and cremasteric reflexes are present and equal. He reveals no atrophy and no loss of muscle power in any extremities. No ankle clonus or Babinski is noted.

"Mental Examination: He is excitable, irritable and states he worries over little and big matters. 'Things shake me up.' He states that he becomes blue at times and cries. He is circumstantial in his talk. He expresses a number of somatic complaints referrable to head, right arm and left leg. He is correctly oriented in all three spheres. He states that he can't remember recent events but is able to recall remote events. He is inclined to be forgetful. He denies ideas of reference, delusions or hallucinations. He realizes his nervousness is causing his trouble. Judgment is greatly impaired, as he implied that he would give me extra money if I gave him a good report. This is his statement, 'If you give me a good report I will give you a little extra.' His retention of general knowledge and calculation ability are fair. He is able to repeat five digits backward with difficulty, however, his perceptual function is poor and fourth degree comprehension is only fair. He is below average intelligence."

On February 14, 1963, Dr. Shrigley again wrote a letter in behalf of the plaintiff to the Social Security Administration, in which he again noted that the plaintiff was seen in his office February 12, 1963, and complained of shortness of breath on exertion, and that plaintiff stated that he was unable to find any employment because of his various physical impairments. Dr. Shrigley, however, does state that he had not received the reports of the consultative examinations of any other physicians.

The plaintiff contends that the defendant Secretary failed to adduce any evidence of the type of work available to the plaintiff, assuming he was capable of performing it; nor was there substantial evidence to support the conclusion that the plaintiff was not physically impaired within the requirements of the Social Security Act. The defendant contends that the plaintiff was not physically or mentally impaired to the extent required by the Act, and therefore offers very little evidence on the issue of available employment opportunities for an individual of plaintiff's education, experience and physical condition. The only issue before the court upon the record is whether there is substantial evidence in the record to support the decision of the defendant Secretary.

The applicable statutes and regulations require a medically determinable physical impairment, 42 U.S.C. §§ 416(i) (1), 423 (c) (2), which can be expected to continue for a long and indefinite period of time, 20 C.F.R., Sec. 404.1502(f), of such extent as to prevent a person in engaging in any substantial gainful activity before disability can be granted. If there is substantial evidence in the record to support the Secretary's determination, the District Court cannot set it aside, 42 U.S.C. § 405 (g); Hawkins v. Celebrezze, (W.D.Ark. 1962) 210 F.Supp. 341; Celebrezze v. Bolas, (8 Cir. 1963) 316 F.2d 498.

There is no dispute that the plaintiff has a medically determinable impairment (silicosis) verified by objective findings which will be of permanent duration. The examining doctors unanimously noted that the plaintiff is afflicted with shortness of breath as a result of his coal mining employment which cannot be cured by present modes of treatment.

■ The opinions of the medical experts are certainly not conclusive as to whether the plaintiff can engage in substantial gainful activity, but are at least some evidence on the restriction of the plaintiff's activity or the lack of it because of his physical condition. (See, Jones v. Celebrezze, (6 Cir. 1963) 321 F.2d 192). However, the record in the case at bar indicates that the examining physicians who alluded to the restriction on his activity were of the opinion that he is precluded only from engaging in arduous physical exertion.

■ The court recognizes that the claimant need not be totally helpless or bedridden to be eligible for benefits. However, the defendant Secretary's determination must be affirmed when it is supported by substantial evidence and is not clearly erroneous. The court cannot as a matter of law substitute its opinion of the evidence for that of the defendant Secretary. See Celebrezze v. Bolas, supra.

The mere presence of a disease or medically determinable impairment does not of itself entitle the claimant to disability benefits under the Act. As heretofore stated, the impairments must cause "inability to engage in any substantial activity." As stated in Gotshaw v. Ribicoff, (4 Cir. 1962) 307 F.2d 840, at page 844:

"* * * See this court's recent opinion in Underwood v. Ribicoff, supra, where it is stated that '* * a recitation of objective, clinical findings will seldom show, without more, the over-all effect of these impairments on a particular individual.' There we pointed out that the fact finder must determine whether or not such limitation of capacity amounts to disability within the terms of the Act. 298 F.2d 850, 852. Finally:

" 'Thus, even though severe physical limitation be established, it is still necessary in applying the legal standard to relate this limitation to the claimant's work history and educational background.' Ibid.

"Other courts have likewise recognized that not every impairment entitles one to disability benefits under the Act and that the impairment must cause inability to engage in any substantial gainful activity."

As to the failure of the plaintiff to attempt to secure employment subsequent to the time of the alleged onset of his disability, see Gotshaw v. Ribicoff, supra, 307 F.2d at page 845:

"Inability to perform a particular job is not 'inability to engage in any substantial gainful activity.' Furthermore, claimant testified that she had made no attempt to get any other kind of work and offered as the only excuse her own belief that she could not 'hold up to it.'

"In Adams v. Flemming, 276 F.2d 901 (2d Cir. 1960), after pointing out that a claimant's capabilities must be considered, the court stated in footnote 3 at page 904: ' * * * "he is not required to sell apples or to start his own business" * * *, but neither is he entitled to make no effort to secure some sort of gainful employment.' And, as Judge Chesnut observed in Wareheim v. Ribicoff, 194 F.Supp. 533, 535 (D.Md. 1961), it was 'quite significant' that the claimant made no effort to obtain employment."

■ The facts as developed by the medical reports and the plaintiff's own testimony show that, although he is afflicted with a medically determinable physical impairment of indefinite duration which may prevent him from engaging in arduous physical activity, yet he is not disabled to such an extent as to prevent him from engaging in any substantial gainful activity. The objective findings of the examining physicians and a reading of the entire record, which includes the plaintiff's testimony, convince the court that the determination of the defendant Secretary is supported by substantial evidence, and therefore

the court is not entitled to set aside such findings and conclusions.

An order is being entered today denying plaintiff's motion for summary judgment, granting defendant's motion and dismissing plaintiff's complaint.