Oscar L. HANNA, Plaintiff,

v.

Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, United States of America, Defendant.

No. 1686.

United States District Court
W. D. Arkansas,
Fort Smith Division.

Sept. 8, 1964.

240

David O. Partain, Van Buren, Ark., for plaintiff.

Charles M. Conway, U. S. Atty., Robert L. Johnson, Asst. U. S. Atty., Fort Smith, Ark., for defendant.

JOHN E. MILLER, Chief Judge.

Plaintiff seeks review of a final decision of the Secretary of Health, Education and Welfare, denying disability benefits under the Social Security Act, 42 U.S.C.A. § 401 et seq. This court has jurisdiction of the action pursuant to Sec. 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g).

This action [1] was commenced by the plaintiff on November 5, 1962, after having exhausted all administrative remedies. The defendant answered on March 4, 1963, and filed a transcript of all prior administrative proceedings. On April 10, 1963, plaintiff filed a motion to remand the case to the defendant Secretary for the taking of additional evidence. The court remanded the cause to the Office of Appeals Council, Department of Health, Education and Welfare, for the purpose of taking additional evidence on April 11, 1963.

On July 13, 1964, the defendant Secretary filed an amended answer, together with a supplemental administrative transcript, and prayed the complaint be dismissed as prayed in the original answer. The plaintiff on August 6, 1964, filed a motion for summary judgment and submitted brief in support thereof. On August 13, 1964, the defendant Secretary filed a motion for summary judgment accompanied by brief in support thereof. The case is now before the court upon the cross motions for summary judgment.

The pertinent non-medical facts, as disclosed by the original and supplemental administrative transcripts, pleadings and briefs are not disputed. Plaintiff was born September 23, 1917, in Alma, Arkansas. He left school at the age of 10 while in the fourth grade and began working on a farm. At the age of 19 he married and went to work on the W.P.A. using a pick and shovel. He was next employed as an agricultural laborer picking cotton. In about 1937 he began working at the Fort Smith Chair Factory as off-bearer and ripsaw operator, and was employed there three years. In 1940 he began working at Camp Chaffee, Arkansas, and was employed there about six months. He then went to California and was employed in the Richmond Shipyard as a chipping gun operator. After six months in California, he returned to agricultural labor in Lodi, California. In 1943 or 1944 he returned to Arkansas and was again employed at Camp Chaffee loading railroad cars. He next began working on the Missouri Pacific Railroad in the shops as a pipefitter's helper. In

[1.] The application for disability benefits in this action was filed September 28, 1960. Plaintiff filed a previous application December 5, 1957, but did not exhaust his administrative remedies when his claim was denied.

1947 he was transferred to the car department and worked as car oiler's helper. He was last employed by the Missouri Pacific Railroad in December 1955. Since 1955 he has not been regularly employed, but engaged in odd jobs— painter, selling vegetables, raising chickens. Plaintiff thus has an occupational history consisting of work activities including manual labor, ripsaw and sander operator, chipper in shipyard, railroad worker, truck driver, painter and agricultural labor.

The plaintiff alleges several impairments which he contends entitle him to disability benefits under the Act, including ulcers, nervousness and psychoneurotic disorder. The medical evidence contained in the record, of course, requires full and complete consideration.

In support of the plaintiff's contention that his various impairments preclude his engaging in substantial gainful activity the record reflects that he has been examined by seven physicians, including four psychiatrists, and has been hospitalized at various times in the Missouri Pacific Employees Hospital, Little Rock, Arkansas; St. Edwards Mercy Hospital, Fort Smith, Arkansas; Crawford County Memorial Hospital, Van Buren, Arkansas; University of Arkansas Medical Center, Little Rock, Arkansas; Arkansas State Hospital (mental), Little Rock, Arkansas; Sparks Memorial Hospital, Fort Smith, Arkansas; and Coyne-Campbell Sanatorium, Oklahoma City, Oklahoma. The court in its examination to determine if the decision of the defendant Secretary is supported by substantial evidence does not deem it necessary to set out in detail the numerous hospital records, but it does seem necessary to recite the objective findings of the various examining physicians.

The plaintiff has had various examinations over an extended period of time by Dr. O. J. Kirksey, a general practitioner of Mulberry, Arkansas. Dr. Kirksey, in his medical report of December 7, 1957, to the State Social Security Disability Unit stated: (TR 76–77)

"(b) Objective findings: X-ray spastic pylorus & duodenum epigastric tenderness, recurrent lumbar social pain (right)

\* \* \* \* \* \* \* \* \* \* \*

"4. Diagnosis: Chronic gastritis—with pylorus & duodenal spasticity. Recurrent lumbar social pain (right).

\* \* \* \* \* \* \* \* \* \* \*

"8. Remarks: This man cannot follow a gainful occupation because of his frequent gastric & lumbar social attacks."

In his letter of September 12, 1958, Dr. Kirksey stated: (TR 81)

"Oscar L. Hanna, Jr., has been under my professional care at irregular intervals from Aug. 1947 to date. "His chief complaints have been abdominal distention, recurrent attacks of severe upper abdominal pain & nausea & at times diarrhea. Blood pressure & pulse do not vary far from normal. The antispasmodics & tranquilizers (such as Equinal & Compazine) give very little relief. Combid (SKF Co.) gave more relief than others, altho the effects did not last very long. This man has a wife and 4 children & needs to work but cannot hold a job because of these frequent attacks.

Signed: O. J. Kirksey, M.D."

Dr. Kirksey on July 7, 1959, submitted a subsequent report to the State OASI, in which there was no elaboration of the previous diagnosis and objective findings, but he did state that the plaintiff's condition began about 1942. In a

letter dated March 25, 1961, Dr. Kirksey stated that the plaintiff has been unable to work since 1956 and that he has treated the plaintiff for the previous ten years. In a reply to an inquiry from the State OASI of May 27, 1961, Dr. Kirksey stated that he understood the plaintiff was about to undergo psychiatric treatment, and he further stated "when his nerves were corrected he would be able to work." The transcript also contains certain clinical records of Dr. Kirksey which are illegible.

The plaintiff has also been seen and treated at various times by Dr. J. A. Thicksten, a general practitioner of Alma, Arkansas. Dr. Thicksten in his medical report to the State OASI dated February 26, 1958, advised the plaintiff not to attempt to work. His report at pages 78 and 79 of the transcript states as follows:

"(b) Objective findings: Mild tenderness of epigastric area. Very nervous, tic of rt. eye. X-ray taken 1–25–58 Upper GI series, normal.

\* \* \* \* \* \* \* \* \* \* \*

"4. Diagnosis: Functional gastro-intestinal disturbance.

\* \* \* \* \* \* \* \* \* \* \*

"8. Remarks: It is believed that this man needs psychiatric help."

———◆———

In his letter of August 28, 1958, Dr. Thicksten stated: (TR 81)

"Mr. O. J. Hanna has been evaluated at this office and Crawford County Hospital with complaints of abdominal pains, nervousness, insomnia, and malaise.

"Physical examination revealed epigastric tenderness, tic of right eye, nervousness, defective vision, post nasal exudate, deformity of nose and mild case of athletes foot.

"Upper G. I. series were made on 6–10–58 revealed the following: Spasticity of digestive tract, but no ulcer or tumor.

"It is believed that psychosmatic manifestation is the major defect; gastritis, and duodenitis. This present condition is of long duration; statis, and possibly progressive.

"This patient's condition is such that he is not able to perform any gainful work."

On January 14, 1958, in a letter Dr. Thicksten again stated that in his opinion the plaintiff could not work. On July 8, 1959, in a medical report to the State OASI, Dr. Thicksten stated: (TR 100–101)

"(b) Objective findings: Mild tenderness of epigastric area. Very nervous, tic of rt. eye. X-ray taken 1–25–28. Upper GI series, normal.

\* \* \* \* \* \* \* \* \* \* \*

"4. Diagnosis: Functional gastro-intestinal disturbance.

\* \* \* \* \* \* \* \* \* \* \*

"8. Remarks: This man is unfit for gainful employment."

———◆———

The transcript contains two additional letters written by Dr. Thicksten, March 1, 1960, and May 20, 1960, in which he again stated that the plaintiff is unable to work. On October 3, 1960, Dr. Thicksten in his third medical report to the

State OASI stated that in his opinion the plaintiff will never be able to work. At page 112 of the transcript, this report states:

"(b) Objective findings: Mild tenderness of epigastric area. Very nervous, tic of rt. eye. Chronic duodenal ulcer found 1–21–60.

\* \* \* \* \* \* \* \* \* \* \*

"4. Diagnosis: Duodenal ulcer, chronic, functional gastro-intestinal disturbance. Chronic severe anxiety reaction.

"5. Treatment: Poor response to medicine & psychotherapy.

\* \* \* \* \* \* \* \* \* \* \*

"8. Remarks: This man, because of his chronic severe anxiety reaction, plus chronic duodenal ulcer and gastro-intestinal syptomology, is unable to do any gainful employment, now or ever."

———◆———

On March 9, 1961, Dr. Thicksten in his fourth report to the State OASI stated: (TR 118–119)

"(b) Objective findings: Mild tenderness of epigastric area. Very nervous, tic of rt. eye. Chronic duodenal ulcer found 1–20–60.

\* \* \* \* \* \* \* \* \* \* \*

"4. Diagnosis: Duodenal ulcer, chronic, functional gastro-intestinal disturbance. Chronic severe anxiety reaction.

"5. Treatment: Poor response to medicine & psychotherapy.

\* \* \* \* \* \* \* \* \* \* \*

"8. Remarks: This man, because of his chronic severe anxiety reaction, plus chronic duodenal ulcer and gastro-intestinal syptomology, is unable to do any gainful employment, now or ever."

———◆———

Dr. Charles T. Chamberlain, an internist of Fort Smith, Arkansas, in his letter of September 2, 1958, which contains no objective findings, stated as follows: (TR 81)

"This is to state that Mr. O. L. Hanna, Jr., Alma, Arkansas has been under my professional care for the past several years. Diagnosis: Anxiety reaction with G.I. somatization.

"I feel that this patient's physical and emotional state are such that he is unable at this time to pursue a gainful occupation."

The plaintiff was hospitalized in the University of Arkansas Medical Center, and the transcript contains a report dated February 6, 1959, signed by Dr. L. A. Cohen, staff psychiatrist, which states: (TR 419)

"PRECEPTOR'S NOTE

"Passive-dependent personality lifelong-GI somatization.

"This man has compared himself over the years with more successful siblings, neighbors, etc. and always sits back to commiserate. I gave him these dynamics very straight because the life history brings this out. He is apparently aware of these personality traits because he admits to the entire formulation.

"He is now preoccupied with Welfare payments. State Rehabilitation has turned him down because he is not well for long enough periods to be trained; etc, etc.

"He wants a statement as to his disability for the Welfare Department. He should have this. He is not treatable since he has to come from Fort Smith, and it would be cheaper for the Welfare to have Dr. Sims treat him.

"DIAGNOSIS: Psychophysiological GI reaction. Neurosis, severe."

Dr. A. B. Martin, an internist of Fort Smith, Arkansas, examined the plaintiff on March 14, 1961, and his medical report of that date reflects: (TR 129–130)

"3. Present condition: GI symptom—epigastric pain. Not affected by diet. Rx–no improvement. Extremely nervous. Neg GI X-ray Nov. 1960 Crawford County Hospital.

"4. Diagnosis: Conversion hysteria. Psychophysiologic gastro-intestinal disturbance manifested by constant abdominal pain.

\* \* \* \* \* \* \* \* \* \* \*

"8. Remarks: This pts history obtained from him and from rather complete records in the Holt Krock Clinic for past 8–10 years. Disability appears to be purely psychiatric."

———◆———

The most extensive psychiatric examination and attempts at treatment were made by Dr. A. A. Hellams of the Coyne-Campbell Sanitarium of Oklahoma City, Oklahoma. Dr. Hellams in a letter of December 7, 1961, was of the opinion that the plaintiff was suffering from emotional disorder which might be helped with medical treatment, and eventually allow him to return to work. After psychiatric evaluation and attempts at treatment, including electric shock, Dr. Hellams in his letter of December 22, 1962, stated: (TR 305)

"This individual was hospitalized at the Coyne-Campbell Sanitarium from December 2, 1962, to December 22, 1962. He received a total of 8 electric shock treatments, and was only slightly improved from his symptoms of depression and hypochondiasis.

"It is my medical opinion that this illness is disabling to the extent that Mr. Hanna cannot engage in gainful employment for an indefinite period of time. I would recommend that he be seriously considered for financial assistance under the Department of Public Welfare or Social Security program."

The plaintiff was also given a consultative examination by Dr. Henry M. Sims of Fort Smith, Arkansas. Dr. Sims in his letter report to H. L. Overby of the State OASI on January 24, 1959, stated that the plaintiff's emotional condition was chronic and static, and that "he is unfit for any regular employment and would be considered disabled." In a medical report to the State OASI of October 18, 1960, Dr. Sims stated: (TR 114)

"3. Present condition: 'Nervous stomach' and inability to work. Invalidism, having to stay in bed much of the time, Anorexia, gas on stomach. Tic of the right eye; preoccupation with somatic complaints, especially of the stomach. Apprehension seems to be decreased by tranquilizers. Patient reported positive X-ray findings of ulcer, duodenum Jan-60.

"4. Diagnosis: Psychophysiologic gastrointestinal reaction.

\* \* \* \* \* \* \* \* \* \* \*

"6. Progress: \* \* \*
   (d) Describe specific restrictions,
     if any, on patient's activity:
       Because of persistent weakness, pain and discomfort in his stomach, has been unable to do any type of work."

———◆———

The administrative record contains a medical report of Dr. D. J. McMinimy of Sparks Memorial Hospital, dated June 27, 1963, in which he stated that the plaintiff suffered from "psychophysiological GI reaction." His report at page 461 of the transcript concludes as follows:

"It is my feeling that this patient's symptoms are functional and that he probably will never completely recover. He wonders if shock therapy will help him. I doubt this. I have advised him that the best thing he can do is probably return to work and to normal activities and to forget his abdominal complaints."

On August 2, 1963, Dr. Peter O. Thomas, District Surgeon of the Missouri Pacific Employees Hospital, wrote to the State OASI, as follows: (TR 342)

"Psychiatric examination revealed: 'The impression of conversion hysteria seems to be correct. Therapeutically the outlook is dim indeed as this man seems to have a very low threshold for the stresses and strains of living, and in turn, an ever lower threshold for physical pain. Ordinarily I would not recommend electric shock in such conditions, but the chronicity and weight loss and near obsessive concern makes him unlikely (or extremely difficult) to respond to psychotherapy. I believe a trial of electric shocks to break the pattern followed by a combination of benzedrine and thorozene might get him back on his feet. Under ideal conditions this should be followed up with psychotherapy if necessary.'

"Patient was discharged to his local doctor, Dr. C. T. Chamberlain, as not improved.

"Patient was discharged from the hospital on September 19, 1955.

"FINAL DIAGNOSIS: Psychoneurosis, mixed type."

The record also contains testimony of Dr. Glen A. Cole, Professor of Education, University of Arkansas, who adduced evidence on behalf of the defendant as to the occupational opportunities open to a person of plaintiff's education, experience and skills. He was of the opinion that the plaintiff was employable as a painter, woodworker, and in other semi-skilled jobs. The source of his occupational information is stated in the record to be the "Dictionary of Occupational Titles," "The Encyclopedia of Arkansas (Ark. Almanac) for 1962," and Bulletin 1370 of the Bureau of Labor Statistics.

The hearing examiner's opinion of February 19, 1964, predicates the denial of disability benefits by the defendant

Secretary[2] upon the failure of the plaintiff's proof to sustain inability because of the impairment to engage in gainful activity between January 1957 and June 1959. At page 241 of the transcript, it is stated:

"Based upon the complete record in this case, the hearing examiner finds that the medical and other proof does not sustain the claimant's contention that he became continuously unable to engage in any substantial gainful activity by reason of impairment within the period from January 1, 1957, to June 30, 1959, inclusive, and that such inability to engage continued to the date he filed his application for benefits, and thereafter."

In view of the complete and elaborate examinations, opinions and stated objective findings of the various physicians, the single question presented by the record in applying the substantial evidence test to the defendant Secretary's decision is thus: Does the plaintiff suffer a severe emotional disturbance which will not allow his engaging in substantial gainful employment, or is he a malingerer?

In summarizing the medical evidence, the hearing examiner discussed the findings and opinions of Dr. Hellams, as follows: (TR 235–236)

"We thus turn to a consideration of all the medical evidence herein which bears on the nature, duration and severity of any nervous disorder which the claimant may have had during the period in question. Since claimant appears to consider the reports of Dr. Hellams to be controlling as to the disability issue herein, it is deemed appropriate to first consider these reports although they constitute the latest psychiatric evidence relating to the claimant's mental status. The earlier report of Dr. Hellams, dated December 7, 1961 (Exhibit B–27), relates to the claimant's condition in February 1961 when he was treated in the Coyne-Campbell Sanitarium under Dr. Hellams' supervision (Exhibits B–80, pages 129–B to 141–B). On discharge from this hospitalization on February 15, 1961, diagnosis was psychophysiological reaction, and Dr. Hellams expressed the opinion that the claimant *was not permanently disabled either physically or mentally at that time*. It appears highly significant to observe that this first report by Dr. Hellams referred to claimant's mental health status more than one and one-half years after June 30, 1959, when he last met the earnings requirements. As to Dr. Hellams' subsequent re-

2. In Hebert v. Celebrezze, (D.Mont.1963) 222 F.Supp. 533, the court at page 534 stated:

"In order to be eligible for a period of disability under 42 U.C.S.A., § 416(i) and for disability insurance benefits under 42 U.S.C.A. § 423, the plaintiff must establish that he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or to be of long continued and indefinite duration and that such disability had its onset prior to the filing of the application and at a time when plaintiff met the 'quarters of coverage' requirements set forth in 42 U.S.C.A. §§ 416(i) (3) and 423(c) (1).

"Under the statute, the burden rested on the plaintiff to prove that he met the conditions of eligibility fixed by the Act before he would be entitled to the benefits for which he applied. 42 U.S.C.A. § 416(i) (1), 42 U.S.C.A. § 423(c) (2). Furthermore, in this proceeding before the court, the decision of the Secretary, if supported by substantial evidence, is conclusive and must be affirmed. 42 U.S.C.A. § 405(g). 'Substantial evidence' is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

The question of what amounts to substantial evidence is, of course, a matter of law, and the court must review the entire record to determine whether there is substantial evidence to support the defendant Secretary's findings. Celebrezze v. Bolas, (8 Cir. 1963) 316 F.2d 498; Huff v. Celebrezze, (W.D.Ark.1964) 227 F.Supp. 704; 42 U.S.C. § 405(g).

port concerning the claimant's condition on December 22, 1962 (Exhibit B–59, duplicated in B–80, page 128–B) which expressed the opinion that the claimant was then unable to engage in gainful employment (some two and one-half years after the earnings requirements were last met), the hearing examiner sees nothing in this report to warrant a conclusion that it even represents a pertinent, much less the most pertinent evaluation of the claimant's mental condition during the crucial period from January 1, 1957, to June 30, 1959. This is to say that it appears to be patent, that if the later report is for consideration, the earlier must also be considered, especially since the earlier report more closely relates to the period of time at issue. It thus appears overwhelmingly obvious that if the resolution of the issue herein rests solely upon these opinions by Dr. Hellams, his initial opinion would prevail, and the claimant's application for benefits should be denied forthwith. However, it may be observed that if a doctor's opinion were controlling as to 'disability' under the Act, there would be little or no need for the adjudicative process, including both the administrative and judicial considerations afforded by the law."

The court has some difficulty in understanding the above quoted analysis by the hearing examiner of the significance of Dr. Hellams first impression of the plaintiff's possible reaction to psychiatric treatment. It is quite obvious from the reports of Dr. Hellams in the record that his first impression that the plaintiff might be helped by psychiatric treatment certainly must yield to the fact that he was not helped by them. When Dr. Hellams, after treatment and further examination of the plaintiff, observed that the plaintiff had not benefited from the proposed treatment, his earlier first impression of what might happen is of no significance whatever. The earlier

speculation by Dr. Hellams as to what might happen is certainly not substantial evidence that the plaintiff is able to engage in substantial gainful activity, and when the fact of eventual treatment and failure to respond to it is considered, this initial conjecture has no value whatever, evidentiary or otherwise. It certainly cannot be said that one sentence in the letter written by Dr. Kirksey, quoted above, which indicates that in his opinion the plaintiff might be able to work "if his nerves were corrected," amounts to substantial evidence.

The foregoing medical evidence conclusively establishes the existence of a severe emotional problem with attendant physical symptoms, i. e., severe anxiety reaction, gastro-intestinal symptomatology, sympathetic stomach reaction due to fatigue and anxiety, and conversion hysteria, (anxiety fatigue manifested and converted into physical symptoms). There is no dispute whatever among any of the examining psychiatric physicians as to the existence of these described disorders.

The court is well aware that the opinions of the examining physicians that the plaintiff is unable to engage in gainful employment are not conclusive of that factual issue. The defendant Secretary, of course, is permitted to resolve this factual issue based upon the objective findings of the medical experts and arrive at his own conclusion as to the ability of the plaintiff to engage in substantial gainful activity. Jones v. Celebrezze, (6 Cir. 1963) 321 F.2d 192; Chronister v. Celebrezze, (W.D.Ark. 1963) 224 F.Supp. 121. In the instant record, however, it is apparent that the objective findings establish a severe emotional disorder, which was also recognized by the consultive examination requested by the defendant Secretary. The hearing examiner in the instant action, whose ultimate findings were adopted by the Secretary and upon which disability benefits were denied, was of the opinion that the claimant was not suffering from a mental disease of such

nature as to constitute a disability under the Act.

The Social Security Act defines "disability" in 42 U.S.C.A. § 423(c) (2):

"(2) The term 'disability' means inability to engage in any substantial gainful activity by reason of any medically determinable physical or *mental impairment* which can be expected to result in death or to be of long-continued and indefinite duration. An individual shall not be considered to be under a disability unless he furnishes such proof of the existence thereof as may be required." (Emphasis added.)

In Clements v. Celebrezze, (W.D.Va. 1963) 216 F.Supp. 78, the plaintiff was denied disability benefits by the defendant Secretary, and upon review the District Court at page 80 stated:

"Finally the Secretary argues (1) that if the plaintiff is disabled, within the meaning of the Act, his difficulty is psychiatric, (2) that under the Secretary's Regulations only certain types of mental disease are recognized as constituting a disability within the meaning of the Act and (3) that the plaintiff's psychiatric condition is not of one of those types. The Regulations do seem so to provide. But if the result of the Regulations is to exclude from the coverage of the Act a psychiatric condition which is in fact disabling within the meaning of the word 'disability' as defined in the Act then the Regulations are simply void insofar as they undertake to deny disability benefits to one so disabled. The Secretary has no power by Regulation to deny benefits to persons actually disabled within the meaning of the Act—no matter what the cause of the disability may be."

■■ The test is not the absence or presence of a particular impairment, but the absence or presence of ability to engage in substantial gainful activity because of an impairment of permanent or indefinite duration, which is either physical or mental, or both. A combination of physical impairment and emotional disturbance has often been the basis of allowing disability benefits under the Social Security Act. See King v. Celebrezze, (W.D.Ark.1963) 223 F.Supp. 457; Hebert v. Celebrezze, (D.Mont.1963) 222 F.Supp. 533. Mental and emotional disturbance alone, if of sufficient severity, is in itself an impairment which may entitle a claimant to benefits under the Social Security Act.

In Sangster v. Celebrezze, (W.D.Mich. 1964) 226 F.Supp. 1, the District Court reversed a finding of the defendant Secretary denying disability benefits based upon a claim of mental disturbance. At page 7 the court stated:

"After summarizing this rather overwhelming medical evidence at the close of his decision, the hearing examiner concluded his finding as to claimant's mental condition with this statement (Transcript, page 23):

" 'There may be a question as to the proper mental diagnosis which is applicable in this case, and it may be questionable whether his "delusions" or phobia on the subject of cancer is a product of unconscious conflicts being expressed in a distorted fashion or a "compensation" type of problem with rationalization on a conscious basis to support his demand for benefits. His paranoid pathology appears to be entirely circumscribed in this area, and he otherwise appears to function adequately in his community, not requiring institutionalization or supervision.'

"This is but the long way of saying that claimant is faking his illness for compensation purposes. It is clear, however, that not one of the examining doctors made this finding. One non-psychiatrist, Dr. LeFevre, stated that this man was capable of a full day's work. Although this was a possibility to be met, not one of the psychiatrists stated that his mental illness was 'compensation' oriented."

The District Court, in dealing with the dilemma of determining whether claimant was severely emotionally disturbed or malingering, further stated:

"Two members of the Workmen's Compensation Appeal Board dealt with this same problem. They stated in their opinion (Transcript, page 137):

" 'He is truly disabled or he is a faker. If he is truly disabled then his disability has been adjudicated to be due to a psychosis. If he is a faker then perhaps this Board referred the wrong person for psychiatric care. Chancing again my own referral I state that I do not believe the evidence before us will support a finding that plaintiff is a faker. I am convinced that he is truly disabled and that his disability is due to a mental derangement resulting from the injury he received. His reactions as shown by the record before us are typical of the psychotic.'

"Similarly, there is no evidence, and certainly not substantial evidence, to support a finding in this case that claimant is faking his illness."

In Lightcap v. Celebrezze, (W.D.Pa. 1962) 214 F.Supp. 209, the court, in discussing emotional disturbance, at page 215 stated:

" * * * It would seem then that this must rest on the question of whether the disputed pain is real, emotional or malingering. It is the expression of experts that emotional pain can be as disabling as organic pain, when the one who suffers it feels it as if it were real pain. In such a case, disability would result and could disable such a person from substantial gainful employment within the meaning of the Social Security Act.

"In this day of scientific and medical achievement, there are numerous medical experts in the field who may examine and test a complaining person objectively and determine with reasonable accuracy the reality and genuineness of a person's subjective complaints, and as well, if any pain exists, its character and extent. Although as between organic and emotional pain, certain instances may not be tested to determine which may be causing the pain, nevertheless, the pain in both may be as real and as disabling. If the plaintiff in this action is malingering qualitatively, medical tests and objective findings should have been available through medical experts, and should have been presented as evidence. Failing this, the Secretary lacks substantial evidence to support his decision."

The court is convinced that the evidence adduced by the plaintiff in the instant action conclusively establishes an emotional disturbance of such severity that he is precluded from engaging in substantial gainful activity. In fact, there is no evidence in the record that would support a finding that he does not suffer an emotional disturbance of such severity as would preclude his engaging in substantial gainful activity. The only statements in the record which indicate that he could work were made before any psychiatric treatment was attempted, and such statements were conjecture as to its effectiveness and must yield to the fact that he had not been helped. The hearing examiner's conclusion that the plaintiff failed to prove the existence of an impairment of such severity to entitle him to disability benefits is not, therefore, supported by substantial evidence. The extensive record in the instant action demonstrates overwhelmingly the manifestations of a severe emotional disturbance, and this court is of the opinion that the rationale of Sangster v. Celebrezze, supra, and Lightcap v. Celebrezze, supra, is applicable and controlling.

Therefore, in accordance with the above, the defendant's motion for sum-

mary judgment is denied and the plaintiff's motion for summary judgment is granted and the defendant is directed to grant the plaintiff disability benefits in accordance with his application.