**William E. COOK, Plaintiff,**

v.

**Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. AC–1184.**

United States District Court
E. D. South Carolina,
Aiken Division.

July 29, 1964.

Murdaugh, Eltzroth & Peters, Hampton, S. C., for plaintiff.

Terrell L. Glenn, Columbia, S. C., for defendant.

SIMONS, District Judge.

In this action plaintiff seeks review of this Court of a decision of the Secretary of Health, Education and Welfare, in accordance with Section 205[g] of the Social Security Act (42 U.S.C.A. § 405 [g]). The decision of the Secretary denied the plaintiff the period of disability and disability insurance benefits for which he applied.

The plaintiff last met the earnings requirements for disability insurance on December 31, 1959. The application for benefits now under consideration was filed by plaintiff on January 17, 1961, in which plaintiff alleged that he became disabled in December 1954. The matter to de determined by this Court is whether or not there is substantial evidence in the record to support the decision of the Secretary that plaintiff did not meet the statutory tests of disability within the time limits indicated and is not entitled to the establishment of a period of disability under Section 216 [i] of the Act (42 U.S.C.A. § 416 [i]) or to monthly disability insurance benefits under Section 223 of the Act [42 U.S.C.A. § 423].

The plaintiff was born September 10th, 1903, and has a seventh grade education. He commenced working in a lumber mill at age fourteen and continued the same employment until 1954 when he became unable to continue his employment due to his physical condition. This information was furnished by the plaintiff and he says that his last assignment with the lumber company was tallying lumber. The employer reported that plaintiff was employed until November 1954, when he was terminated as not physically able to perform his duties.

The plaintiff has complained since 1954 of extreme weakness and nervousness, insomnia, poor appetite, digestive disturbances, loss of weight, stomach trouble, heart trouble, anxiety, difficulty in breathing and related physical problems.

Upon admission to the South Carolina State Hospital [mental] on November 13, 1954, plaintiff was very much confused and disturbed and suffered hallucinations. The Staff diagnosis of December 7, 1954 was "chronic brain disorder; chronic brain syndrome associated with intoxication, drug or poison intoxication except alcohol [barbiturates with psychotic reaction]."

Plaintiff was treated by Dr. W. M. Bennett, a General Practitioner, regularly from 1954 for cirrhosis of the liver, nervousness, weakness, digestive disturbances, insomnia, personality disorders, cardiovacular renal disease, premature arteriosclerosis and a moderate amount of emphysema. In a letter dated June 12, 1962, Dr. Bennett summarizes his treatment of the patient and states that he hospitalized plaintiff and made a definite and positive diagnosis of cirrhosis of the liver by laboratory means. He further states that plaintiff shows typical signs of psycho-neurosis somewhat of a schizophrenic and at times becomes almost a maniac. Dr. Bennett further states that in his opinion plaintiff is totally and permanently disabled and that such disability originated in 1954.

Dr. James A. Hayne, a General Practitioner, saw the plaintiff in 1954 at the time he was admitted to the South Carolina State Hospital and states that in his opinion plaintiff was totally and permanently disabled at that time.

The plaintiff was examined September 16, 1957 by Dr. Cheves McC. Smythe, a full time specialist in internal medicine, who states that upon physical examination plaintiff is a chronically ill, thin, tremulous, worried looking, apparently slightly confused man with a florid facies. He states further in the concluding paragraph of his report, "This man indubitably has chronic illness. He is a known alcoholic and shows many signs of his disease. His vagueness, his weight loss, his poor nutrition, his tremulousness, his inability to concentrate, his extreme weakness would all go along with many years of heavy drinking. As far as objective signs of liver disease are concerned, there is not very much. He does have extensive telangiectasia, but there is no gynecomastia, loss of axillary

hair, testicular atrophy, etc. The liver is not palpable and would not seem to percuss enlarged. Of course it could be small, but he presents no peripheral evidence of portal hypertension. As far as liver function tests are concerned, the only positive one is the high gamma globulin. This might be expected in hepatic disease, but its relation to his extensive furunculosis is questionable. At this time with this evidence one cannot make a firm diagnosis of cirrhosis of the liver in this man. I suspect, however, on other grounds that he does have liver disease."

The plaintiff was examined April 26, 1961 by Dr. P. C. Gazes, a full time specialist in cardio-vascular disease. In his report he indicated that plaintiff who is 5 feet 8½ inches tall weighed 123½ pounds. Plaintiff was described by Dr. Gazes as being a rather thin, anxious individual with florid facies. He concluded that plaintiff has mild pulmonary emphysema, probably has some mild liver changes and that his picture as evidenced by the objective medical findings is typically that of a chronic alcoholic.

Several social security representatives interviewed plaintiff in connection with his application and their reports which are in the record state that plaintiff appears very weak and nervous, is very thin and pale and appears ill. Plaintiff stated that at times he is too nervous to hold a cup of coffee, pour his medicine or shave himself, that he has to sit and rest after walking about one hundred yards and that he can no longer drive an automobile. He stated to Dr. Smythe in 1957 that he had lost 52 pounds in weight.

If the findings of the Secretary are supported by substantial evidence they must be affirmed. Substantial evidence has been defined as more than a scintilla but less than a preponderance. The Court has a duty, however, to scrutinize the record as a whole to determine whether the conclusions reached by the Secretary are rational. Thomas v. Celebrezze, 331 F.2d 541, [4th Cir. 1964].

The plaintiff must show in this case that he has a medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration and which renders him unable to engage in any substantial gainful activity. The tests by which the proof in a particular case must be governed in meeting these requirements are set out in Underwood v. Ribicoff, 298 F.2d 850 [4th Cir. 1962] and Thomas v. Celebrezze, supra.

The Secretary approved the finding of the Hearing Examiner that "the claimant's failure to work was because of his alcoholism and not primarily because of his liver condition."

This case does not turn solely upon the question of whether plaintiff has cirrhosis of the liver sufficient in itself to meet the disability requirements of the Social Security Act but rather upon the question of whether or not the objective medical findings as a whole disclose a medically determinable impairment. Thomas v. Celebrezze, supra. In my opinion the medical findings contained in the record of this case substantiate such an impairment. Thomas v. Celebrezze, supra.

The defendant calls attention to the cases of Mays v. Ribicoff, 206 F.Supp. 170 [W.Va.1962] and Thompson v. Flemming, 188 F.Supp. 123 [Ore.1960] which held that a claimant who could engage in a substantial gainful activity if he would reduce his consumption of alcohol is not disabled within the terms of the Social Security Act. In the Mays case one of the doctors who examined the claimant stated that he felt that the plaintiff would never be any better because he would not do anything to help himself and the Court concluded that the proof in the case supported the conclusion that the addiction to alcohol, rather than any underlying physical or mental impairment, was the cause of plaintiff's unemployment. In the Thompson case the Court said that the evidence indicated that the plaintiff's major difficulties arose because he did not adhere to his diabetic diet and continued to drink excessive amounts of alcoholic beverages despite the repeated prohibitions of the physicians. The record contained the medical

opinion that the plaintiff was able to perform the average sedentary to light physical activity in spite of his obvious physical ailments.

There was, of course, testimony on behalf of the plaintiffs in the Mays and Thompson cases that they were disabled and that such disability rendered them unable to engage in any substantial gainful activity. This created a conflict in the evidence in those cases which was resolved by the Secretary adversely to the plaintiff. There is no such conflict in this case. Each and every medical report contained in the record from 1954 to 1962 indicates that plaintiff is thin, weak, nervous, anxious and chronically ill physically. The 1954 diagonsis at the State Hospital indicates permanent brain damage and the subsequent medical examinations show continued mental problems. Each examining physician upon consideration of these undisputed objective findings concludes that the plaintiff is *chronically* ill. Two physicians state that the plaintiff is unable to work. No physician states that he is able to work or that his condition can or will be improved. There is no evidence that the impairment is remediable.

The plaintiff was unable in 1954 to continue tallying lumber, as light an assignment as there is available in the lumber industry wherein he had been employed exclusively since childhood. When viewed in the light of his limited education and lack of qualification and experience in any other type of employment it becomes very clear that plaintiff's physical and mental impairment prevents him from engaging in any substantial gainful activity. There is no evidence to the contrary.

After consideration of the evidence and review of the applicable judicial interpretation of the Social Security Act, I conclude that the findings of the Secretary as to the establishment of a period of disability and disability insurance benefits are not supported by substantial evidence in consideration of the record as a whole, but that the plaintiff's claim is fully substantiated.

I further find that the conclusion of the defendant that the plaintiff is not entitled to the claimed period of disability and to disability insurance benefits is clearly erroneous, incorrect and should be reversed and judgment for the plaintiff entered.

It is so ordered.