John O. SELDOMRIDGE

v.

Hon. Abraham J. RIBICOFF, Secretary of Health, Education and Welfare.

Civ. A. No. 29091.

United States District Court
E. D. Pennsylvania.

April 27, 1962.

708

Ira I. Pechter, Philadelphia, Pa., for plaintiff.

Drew J. T. O'Keefe, U. S. Atty., and Mabel G. Turner, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

LUONGO, District Judge.

On July 29, 1959, plaintiff filed applications with the Bureau of Old Age and Survivors Insurance of the Social Security Administration, Department of Health, Education and Welfare, to establish a period of disability under § 216 (i) of the Social Security Act, 42 U.S.C.A. § 416(i), and for payment of disability insurance benefits under § 223(a), 42 U.S.C.A. § 423(a). The basis for the applications was an alleged inability to work commencing January 16, 1959, because of "heart trouble, kidney and lungs".

The Bureau denied the applications and upon reconsideration affirmed its decision. On May 19, 1960, at plaintiff's request, a hearing was conducted by a Hearing Examiner who, on June 6, 1960, filed a report denying plaintiff's applications. Plaintiff's request for review of the Hearing Examiner's decision was granted by the Appeals Council and additional evidence submitted by plaintiff was made part of the record. Thereafter, the Appeals Council denied the request for review of the Hearing Examiner's decision.

This action was instituted pursuant to § 205(g) of the Act, 42 U.S.C.A. § 405 (g), to review the final decision of the Secretary of Health, Education and Welfare, denying the claims. After defendant's answer was filed both parties moved for summary judgment on the certified record of the proceedings. The cross-motions for summary judgment are before us.

Since the action of the Appeals Council constitutes the official act of the Secretary, plaintiff is permitted by the section referred to above to seek judicial review of that decision. That review is limited by § 205(g) to the extent that,

"The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive, * * *."

In order to establish a period of disability or qualify for disability benefits plaintiff must show he has been under a continuous disability as that term is

defined by the Act. Under § 216(i) (1) and § 223(c) (2), 42 U.S.C.A. § 416(i) (1) and § 423(c) (2),

" \* \* \* the term 'disability' means \* \* \* inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or to be of long-continued and indefinite duration, \* \* \* "

The Hearing Examiner concluded,

" \* \* \* that the claimant has failed to establish that he has a medically determinable physical or mental impairment or combination of impairments of sufficient severity \* \* \* that actually precluded him from engaging in any substantial gainful activity \* \* \* "

This conclusion was bottomed on the following findings:

(a) plaintiff does have hypertensive heart disease;

(b) disability in cases of heart disease may range from 0 to 100%;

(c) plaintiff failed to show that his cardiac reserve was so reduced as to preclude any type of substantial gainful activity;

(d) plaintiff was disabled from performing his ordinary work as a shipfitter;

(e) plaintiff was able to do "light work";

(f) plaintiff was well motivated and his mental faculties were unimpaired;

(g) the weight of the evidence supported the opinions of Dr. Savacool, a consultative internist who examined plaintiff at Government's request, rather than those of Dr. Cohen, plaintiff's treating physician;

(h) while plaintiff is suffering from partial disabilities which handicap him in obtaining suitable gainful employment and which will prevent him from engaging in arduous work, his condition does not prevent him from engaging in other types of light work commensurate with his age, training, past background and experience.

Our independent examination of the entire record reveals that plaintiff, a single male, born in either 1900 or 1902, lives in a two room apartment where he cooks for himself and an 85 year old widow, and which he manages to keep presentable. There are two flights of stairs leading to plaintiff's apartment which he traverses once a day. He reads most of the day and when he goes out for a walk the first block tires him out. Groceries are purchased from a store about one block from his home and plaintiff is able to carry these back to the apartment himself. He is able to use trolleys and trains.

Plaintiff went to the eighth grade in school and received the equivalent of a high school education while he was in the Army. He was in the Army from 1919 to 1922 and from 1930 to 1936. From 1922 to 1930 plaintiff worked as a movie projectionist, and from 1936 to 1941 he operated a hotdog stand in Atlantic City during the summer and showed movies in small towns in the winter.

In 1941, after spending six months as a shipfitter trainee at the Philadelphia Navy Yard, he became a third class shipfitter. His training consisted of learning to read blueprints and general procedures in shipbuilding. His work consisted of telling work gangs of drillers and welders what to do. In this work he had some physical activities such as measuring, drawing lines, etc.

Plaintiff was a messenger for Triangle Publications from 1945 to 1952, and in 1952 he returned to the Navy Yard as a first class shipfitter. From that date until January 19, 1959, he worked as a shipfitter for several companies.

Plaintiff has a history of kidney stones which required several operations, the last one in 1936. He has some occasional kidney trouble and was last in the Veterans Hospital for a check up in 1959. The Veterans Administration has awarded plaintiff a 10% disability for the kidney condition for which he receives $15.00 a month.

In 1952, plaintiff developed tuberculosis and was in a sanitorium for eight months. In December, 1958, he came under the care of Dr. Cohen for bronchopneumonia. He was hospitalized at St. Luke's Hospital from March 15, 1959 to March 21, 1959, for suspected lung cancer. Tests failed to reveal evidence of cancer. Follow-up studies on the tuberculosis revealed it to be in an inactive or arrested stage, but was something to be watched. His sputum was negative but there was emphysema and arrested tuberculosis of both upper lobes of the lungs. Electrocardiogram indicated arteriosclerosis and a blood examination revealed anemia. He was discharged from St. Luke's with a diagnosis of "Hypertensive Heart; Pleural Effusion; improved".

Several reports from Dr. Cohen are in evidence. The earliest dated July 22, 1959, accompanied by a letter, discloses a diagnosis of arteriosclerosis and hypertensive heart disease with symptoms of angina, dyspnea, ankle edema. Blood pressure at the time was 170/100. Plaintiff's chief complaint then, as now, seemed to be shortness of breath. Bilateral pulmonary tuberculosis was reported as arrested. Plaintiff's prognosis was static, however, improvement was expected within six months. Dr. Cohen indicated that plaintiff was to undergo no exertion of any kind.

Plaintiff stated to the Hearing Examiner that he took phenobarbital for high blood pressure and $\frac{1}{10}$ gram of digitalis for his heart. Dr. Cohen reported that at the time he was hospitalized in St. Luke's the hypertension was not corrected, but that the pulse was normal under digitalis.

A subsequent report of December 4, 1959 was substantially the same with dyspnea on exertion, walking up stairs or to corner grocery. There was also a mention of emphysema. Dr. Cohen reported that plaintiff was restricted from exertion of any kind and that he was incapacitated because of the combination of diminution in function of lungs because of the chronic tuberculosis and the arteriosclerotic heart.

On May 6, 1960, Dr. Cohen wrote: "I think that physical work or any physical exertion will aggravate his condition."

Plaintiff testified at the hearing that he could not work because of a "rotten feeling" that developed when he made an attempt to work. He said he felt as though the entire room was crushing him, like he was being strangled.

There is also in evidence a report of Dr. Savacool, an internist who examined plaintiff on behalf of the Secretary. Dr. Savacool reported that plaintiff's symptoms were not typically dyspnea and that he could walk steps with little difficulty and walk level without immediate limitation. He also reported ankle edema and inactive tuberculosis. He found blood pressure at 152–164/82–90, pulse regular, breathing normal in rate, no cyanosis or dyspnea on moderate exertion and no functional emphysema.

Dr. Savacool concluded that there was no disability from the standpoint of lung function. His report contains the following statement relevant to heart disease:

"He states that he has heart disease but I could judge only from the history since the examination showed no definite evidence of it. He performed the tests with no discomfort. Electrocardiographic evidence and/or a report from the hospital where he was studied in March would be very helpful in establishing his cardiac status. If the story is reliable which I have every reason to believe is the case, I would have to conclude that he is disabled from his normal occupation as a ship-fitter which requires much stair and ladder climbing but he should be able to do light work if available. He appears well motivated and his mental faculties are unimpaired."

There is also in the record an undated contact sheet (Exhibit 8, pp. 80–83) noting that plaintiff walked about five miles a day slowly, that he had read about heart disease, that he learned how to build an electrocardiogram machine, that seven years before he had built a telescope and that he was presently studying

electrocardiograph analysis. That information was not developed at the hearing.

 To establish a disability under the Act, the claimant must be suffering from a mental or physical impairment *and* the impairment must result in an inability to engage in any substantial gainful activity. Klimaszewski v. Flemming, 176 F.Supp. 927 (D.C.E.D.Pa.1959). Disability does not require that a claimant be bedridden, completely paralyzed or unable to lift a finger, Adams v. Flemming, 276 F.2d 901 (2nd Cir. 1960), but the impairment does have to be of "long lasting duration". Hutton v. Flemming, 188 F.Supp. 238 (D.C.D.Kan.1960). The evidence in this case reveals an impairment of long lasting duration but as to the requirement of inability to engage in any substantial gainful activity, the Secretary found that the plaintiff failed to carry his burden. The question before the Court, therefore, is whether there is substantial evidence in the record to support the Secretary's finding. If his findings of fact and the logical inferences deduced therefrom are based on substantial evidence, they are conclusive and not subject to the Court's review. Adams v. Flemming, supra; Thompson v. Flemming, 188 F.Supp. 123 (D.C.D.Or.1960). But the ultimate facts, as distinguished from the primary evidentiary facts, found by the Secretary

"* * * must be reached by a process of legal reasoning based on the legal significance to be afforded primary evidentiary facts * * *."

Braun v. Ribicoff, 292 F.2d 354, 357 (3rd Cir. 1961)

The ultimate facts *are* reviewable by the Court which has the duty to satisfy itself

"* * * that the agency determination has warrant in the record, viewing that record as a whole, and a reasonable basis in law."

Braun v. Ribicoff, supra.

Such primary evidentiary facts as the Secretary found are supported by the evidence but from our view of the record we are convinced that those primary facts are in themselves legally insufficient to support the ultimate finding that plaintiff is not precluded from engaging in "light work". The Secretary's ultimate finding is based primarily on Dr. Savacool's report that plaintiff is able to engage in "light work". To buttress that ultimate finding the Secretary relied on a Department Regulation [1] illustrating the severity required to qualify a condition as a disability. While there is evidence indicating that plaintiff's condition was not of the severity illustrated in the Regulation, the Regulation does not permit the Secretary to rest at that point, it requires that conditions which fall short of those described therein be evaluated in terms of whether they do in fact prevent the individual from engaging in substantial gainful activity. It is in that regard that the record here is deficient. The difficulty lies not with the findings which the Secretary made, but with those which he failed to make.

 There is very little evidence and virtually no findings by the Secretary as to the actual activities in which plaintiff can and cannot engage and as to his employment opportunities. The trend in recent cases is that to support a finding that a claimant is able to engage in substantial gainful activity there must be evidence in the record revealing the economic realities of the situation. The ultimate finding may not be based on speculation. Specific findings of primary facts in this respect are essential to support the ultimate fact found by the Secretary in this case, and the absence of such findings renders the basis for his finding insufficient as a matter of law.

In Klimaszewski v. Flemming, supra, the Court reversed a ruling of the Appeals Council that a claimant's condition

---

1. 20 C.F.R. § 404.1502(a) (3)

"Diseases of heart, lungs or blood vessels, which have resulted in major loss of heart or lung reserve, as evidenced by X-ray, electrocardiogram or other objective findings so that, despite medical treatment, it produces breathlessness, pain or fatigue on slight exertion, such as walking several blocks, using public transporation or doing small chores."

did not preclude him from engaging in substantial gainful activity. The Court held that there was no evidence in the record showing that claimant was qualified for any specific employment, and that such a finding was essential to support the Council's decision. Interpreting the relevant section of the Act, the Court said at page 932 of 176 F.Supp.:

"The word 'any' must be read in the light of what is reasonably possible, not what is conceivable. The statute must be given a reasonable interpretation. It is a remedial statute and must be construed liberally. It was not the intention of Congress to impose a test so severe as that required by the Secretary as to exact as a condition precedent to the maintenance of a claim the elimination of every possibility of gainful employment."

A similar approach was taken in Kerner v. Flemming, 283 F.2d 916 (2nd Cir. 1960), where, as in Klimaszewski, and the instant case, the issue involved was the ability of a claimant to engage in substantial gainful activity. The Court, at page 921, stated that two questions had to be resolved to determine that issue:

" * * * what can applicant do, and what employment opportunities are there for a man who can do only what applicant can do? Mere theoretical ability to engage in substantial gainful activity is not enough if no reasonable opportunity for this is available * * *."

The record before the Court in Kerner was found to be deficient because there was no evaluation of claimant's ability to perform certain acts, such as standing, lifting, walking, etc. Claimant's employment picture was equally as obscure.

"Here is a man, admittedly able to do only light work, and this at a location reachable without undue exertion, and presenting a prospective employer with the unattractive combination of age, heart disease, diabetes and acute worry about himself. No one of these factors might be fatal to employment—indeed, the constellation of them may not be— but the Secretary had nothing save speculation to warrant a finding that an applicant thus handicapped could in fact obtain substantial gainful employment."

The Court there noted that it should not be difficult for the Secretary to provide evidence as to what claimant could do and what he could not do and as to the employment opportunities available to him. Such evidence was viewed by the Court as a prerequisite to the determination of the issue before it. Several Circuits have accepted the Kerner rationale. Ferran v. Flemming, 293 F.2d 568 (5th Cir. 1961); Hall v. Flemming, 289 F.2d 290, 291 (6th Cir. 1961).

█ Because of the above noted deficiencies of the record before us on these material points, we will remand the record to the Secretary, pursuant to the provisions of § 205(g) of the Act, 42 U.S.C.A. § 405(g), for additional evidence and findings and it is so ordered.