Emma JOHNSON, Plaintiff,

v.

Anthony J. CELEBREZZE, Secretary of
Health, Education and Welfare,
Defendant.

Civ. A. No. 3995.

United States District Court
D. North Dakota,
Southeastern Division.

Aug. 13, 1964.

John D. Kelly, Wattam, Vogel, Vogel,. Bright & Peterson, Fargo, N. D., for plaintiff.

Gary Annear, Asst. U. S. Atty., Fargo, N. D., for defendant.

RONALD N. DAVIES, District Judge..

Plaintiff brought this action under Section 205(g) of the Social Security Act as amended, 42 U.S.C.A. § 405(g),. to review a final decision of the Secretary of Health, Education and Welfare,. denying Plaintiff a period of disability under Section 216(i) (1) of the Act, 42 U.S.C.A. § 416(i) (1), and an award of disability insurance benefits under Section 223(a) (1) of the Act, 42 U.S.C.A. § 423(a) (1).

The record reveals that the Plaintiff,. Emma Johnson, was born November 1,. 1902, and has a high school education.. She has been employed as a general office worker over the years. Her work history discloses that from 1941 to 1945 she was employed by the United States Ordnance Department as an inspector; from 1946 to 1948 as a clerk, performing routine office work for the Veterans Administration; from 1948 to 1950 as a receptionist; from 1950 to 1953 as a clerical employee; and from 1953 to June, 1959, as a general office worker in a department store. She left her employment at the store because of a company policy retiring older women or transferring them to sales work. Shortly after leaving the store, she broke her ankle which healed normally. There-

after, in June, 1960, she was employed as a cashier-credit manager but left this position September of the same year for reasons of health.

The Plaintiff consulted Dr. Amidon of Fargo on October 7, 1960, at which time a biopsy of a lesion of the right labia was performed. It proved to be malignant, and the diagnosis was carcinoma of the labia. On October 19, 1960, a radical vulvectomy and a right ilio-inguinal lymph node dissection was performed by Dr. Rogers of Fargo. On November 2nd, 1960, Dr. Rogers performed a left ilio-inguinal lymph node dissection. This type of surgery may be considered very extensive, and because of the nature of the tissue involved, the patient is usually incapacitated for an indefinite period of time.

On February 20, 1961, the Plaintiff filed an application for a period of disability and/or disability insurance benefits with the Social Security Administration, Bureau of Old-Age and Survivors Insurance, giving cancer as the cause of her disability.

The Plaintiff submitted to a consultative examination by Dr. Wold, also of Fargo, who, in his report dated March 29, 1961, stated that:

" * * * There are bilateral inguinal scars with granulation tissue and these are both draining. There is edema in the perineum with redness of the vulva and there are some hemorrhoids detected. The lesions that are in groin are naturally slow in healing. It is my feeling that the patient is disabled. I think that it is very likely that after the lesions in her groin heal and she gets stronger that she would be able to be gainfully employed. When that will be is difficult to say. *Certainly at the present time there is a large area of granulation tissue to heal.* * * * " (*Underlining* supplied.)

As a postscript the Doctor added that "We are unable to prognosticate too accurately regarding her eventual *cure* but I feel it is quite likely."

The Bureau denied the Plaintiff's application on June 12, 1961, having made a determination that " * * * We believe that your condition will in the foreseeable future be improved to the point that it will no longer keep you from doing gainful work with reasonable regularity."

Mrs. Johnson then filed a request for reconsideration of the Bureau's determination and submitted therewith a letter by Drs. Amidon and Rogers dated June 16, 1961, which stated:

" * * * At the present time the bilateral ilio-inguinal node dissection is healing but is not completely healed and because of the disruption of the lymph channels there is marked edema of the vulva so that at the present time Mrs. Johnson is incapacitated to a very marked degree. It would be impossible for her to continue a full time or even part time employment at the present time. This period of disability will last for an indefinite period of time, the length of which cannot be determined at this time."

On September 20, 1961, the Bureau again denied her application stating that:

"The medical evidence in your case shows that you were operated on for your condition, and that there is not yet complete healing. We realize you are not able to do any work at present. However, the evidence shows that your condition is improving, and will eventually cure to the point when you will be able to return to work."

The Plaintiff then requested a hearing before an Examiner which was granted and the hearing held on March 23, 1962. At that time the Examiner had before him a progress report of Dr. Amidon dated November 9, 1961, which contained the following:

"Mrs. Johnson was in the office today for a routine postoperative checkup. It is now one year since she had her original surgery which

consisted of a radical vulvectomy and radical node dissection for carcinoma of the vulva. *However, there is still a very marked degree of edema of the vulva which makes it very difficult for her to sit and also causes a great deal of discomfort while walking. It is improbable that this edema will disappear to any further extent. I am sure by this time she has reached the maximum amount of improvement which she will have following this type of surgery."* (*Underlining* supplied.)

The Hearing Examiner, whose medical or psychiatric education, if any, is not disclosed by the record, undertook what has all the characteristics of a clinical diagnosis of this Plaintiff.

He wrote:

" * * * To the Hearing Examiner there was no pallor, jaundice or cyanosis. Although her muscle tone appeared to be good, and there were no apparent signs of senescence or manifestations of pain, there were stigmata of easy fatigability and discomfort throughout the hearing. Claimant climbed a steep flight of stairs consisting of 19 stairs to the hearing room on the second floor of the Moorhead City Hall, with the assistance of her son, Paul. Upon entering the hearing room, she appeared to be tired. Her abdomen was paunchy and protruding. She sat in a slouchy position to avoid pressure on the swollen vulva.[1] Although she complained of numbness and pain in the legs at night, and stated that it was often necessary to elevate her legs in bed, there was no manifestation of severe, persistent leg pain. Her observed movements, including walking, sitting, rising, raising her hand for the administration of the oath, and gesturing appeared to be normal and executed without any signs of pain, but were guarded, and executed with discomfort. Although claimant walked with a very slow gait, and was assisted by her son, no ambulatory aberration was observed. Despite the protestation of numbness in the legs, claimant was in the hearing room for one and three-quarter hours, and upon completion of the hearing, walked out of the hearing room and down the stairs, assisted by her son, without any evidence of numbness in either leg. Choice of words and expressions were consistent with her education and background. She spoke in a low, weak voice. Her memory was good. In alertness, comprehension and intelligence, claimant appeared to be average. Claimant was oriented in the three spheres,[2] coherent, and in good contact. She had a pleasant manner, conducted herself with dignity and courtesy, and participated well in the hearing. She manifested no hallucinations or delusions, but displayed signs of anxiety, tenseness, and depression. Despite claimant's denial of anxiety and depression, it appeared that there was some present psychogenic overlay.[3] * * * " R., P. 17.

Moreover, the Examiner states flatly in his findings that "Claimant's house confinement is self-induced." R., P. 25. There is not a shred of credible evidence anywhere in the record to sustain this conclusion.

Despite all of the medical evidence before him to the contrary, the Hearing Examiner disposed of the question of the Plaintiff's pain and discomfort by the following comment:

" * * * the subjective nature of complaints of pain has always been

---

1. Just how the Examiner knew this, he does not say.

2. This is another example of the Examiner delving into the realm of medicine and psychiatry. The record does not disclose what the "three spheres" are

and I am precluded from going outside it for explanation or determination.

3. I 'should suppose this is psychiatric terminology, but nothing in the hearing or exhibits explains it and certainly the Hearing Examiner does not.

well known. Two thousand years ago Seneca [4] *(Epistles)* commented on that wonderful quality of pain, that if prolonged it cannot be severe, and if severe, it cannot be prolonged. Claimant's subjective complaint of pain and discomfort, due to the edema of the vulva, is well recognized, and is not disputed. However, upon the entire record, the Hearing Examiner finds that claimant's pain quantitatively and qualitatively has not been of the degree to render her unable to engage in substantial gainful activity during the period herein material. There is no evidence to support a finding that the pain is persistent, severe, intractable and limiting."

The Hearing Examiner concluded:

" * * * Claimant has not sustained her burden of proof by substantial evidence. Of controlling significance in this case is the fact that pain and discomfort, from edema of the vulva, is the principal, if not the sole disabling factor alleged in this case. This is not sufficient to constitute a statutory 'disability.' The lesions in her groin have healed. Clearly, claimant's condition may not be considered to meet the definition of *'long-continued and indefinite duration.'* An individual will be deemed *not* under a disability if, with reasonable effort and safety to herself, the impairment can be diminished to the extent that she will not be prevented by the impairment from engaging in any substantial gainful activity. It is clear that claimant has the physical reserve, experience, background, and ability to carry on her past work or some type of work that would not be detrimental to her health. It is significant that claimant has made no attempt to obtain or to re-engage in work activity compatible with her impairment after recuperating from her surgery. In short, there is no showing of an unsuccessful work attempt. Obviously, claimant has demonstrated both a fear and a lack of motivation to attempt other gainful employment. Insufficient motivation to work is not, of course, a basis for a finding of 'disability.' (Citations omitted.) In short, the evidence suggests a lack of motivation, and a desire to retire without making any effort to return to gainful employment. However, disability insurance benefits were not intended for individuals who chose to retire without making any attempt to obtain other work. * * * Claimant has failed to introduce any evidence that *none* of the hundreds of jobs available in the business world, not involving strenuous physical activity, are within her capabilities."

The Plaintiff's action was then denied.

An appeal was made to the Bureau of Hearings and Appeals from the Examiner's decision. The Appeals Council desired further medical evidence and arranged for the Plaintiff to be examined again by Dr. Wold. The pertinent part of his report submitted October 25, 1962, was that:

" * * * The vulva was edematous. Abdomen was scarred. There was a slow return of the ankle jerk. The abdomen was slightly distended and soft. It was our impression that the patient had postoperative pain, possibly due to scarring along with vulval edema secondary to her surgery. We further felt that she likely had myxedema. * * *

"The unhealed wound described in our communication of March 27, 1961 had completely healed. * * *

"From the above it is obvious that the patient very likely has myxedema, untreated. She would likely benefit a great deal from therapy. The wound mentioned in previous

4. The Court takes judicial notice that Lucius Annaeus Seneca was a Roman philosopher and author who died nearly 1,900 years ago. History does not indicate that he was ever a physician.

communications has healed leaving some vulval edema. The patient continues to complain bitterly of perineal, thigh and pelvic pain on standing or sitting."

The report of Dr. Wold does not contain any opinion or finding with respect to the effect of the vulval edema on Plaintiff's physical or occupational activities, but a postscript suggested that a copy be sent to the Plaintiff's physician as therapy of her myxedema might well rehabilitate her.

The Appeals Council affirmed the decision of the Hearing Examiner, adopting all of his inferences, findings and conclusions on the ultimate issue of disability and held that Plaintiff's condition following surgery for carcinoma of the vulva had improved sufficiently to permit her to return to substantial gainful activity.

The question for determination is whether the findings and conclusions of the Hearing Examiner, as affirmed by the Appeals Council and adopted by the Secretary, are supported by substantial evidence.

The only possible medical evidence before the Examiner upon which he could base his conclusions, aside from his personal observations, was the report of Dr. Wold on March 29, 1961, in which he expressed the opinion that "after the lesions in her groin heal and she gets stronger that she would be able to be gainfully employed" qualified by the statement that *"When this will be is difficult to say."* (Emphasis mine.)

The opinions of the two physicians who had treated the Plaintiff were that she was "incapacitated to a very marked degree"; that "this period of disability will last for an indefinite period of time"; that *"it is improbable that this edema will disappear to any further extent";* and that *"she has reached the maximum amount of improvement which she will have following this type of surgery."* (Emphasis mine.)

██ Where the expert opinions of the two physicians who had treated the

Plaintiff were in no manner contradicted by other expert medical opinion, there was no substantial evidence on which the Hearing Examiner could find adversely to the Plaintiff. It is true that Dr. Wold stated that after the lesions had healed and the Plaintiff had gained strength, she would be able to be gainfully employed, but he could not say that this would be at any definite time. To deny the Plaintiff's claim on the grounds that sometime in the unforeseeable future she *might* be gainfully employed is a highly technical and unrealistic interpretation of "disability" when the Act provides only that the impairment be of long continued and indefinite duration.

As further grounds for affirming the Examiner's decision, the Appeals Council expressed the view that if the Plaintiff were to submit to treatment for myxedema, further improvement in her symptomatology could reasonably be expected. This was based upon Section 404.1502(g) of the Social Security Administration Regulation No. 4 (20 CFR 404.1502(g)) which provides that:

"An individual will be deemed not under a disability if, with reasonable effort and safety to himself, the impairment can be diminished to the extent that the individual will not be prevented by the impairment from engaging in any substantial gainful activity."

The Plaintiff having never contended that her physical impairment was caused by myxedema, why the Appeals Council considered Section 404.1502(g) germane to any issues before it is inexplicable. In any event, as the issue was not before the Hearing Examiner and the Plaintiff was not given an opportunity to contravert Dr. Wold's opinion that she likely had myxedema, the Appeals Council ought not to have considered what effect, if any, it had upon her physical condition.

Having reviewed the record before it with great care, this Court is of the opinion that the final decision of the Secretary of Health, Education and Welfare

denying Plaintiff a period of disability under Section 216(i) (1) of the Act and an award of disability insurance benefits under Section 223(a) (1) of the Act is without substantial evidentiary basis and was induced by an erroneous concept of applicable law.

Therefore, it is ordered that the Secretary's motion for summary judgment must be, and it is hereby denied; and that the Plaintiff's motion for summary judgment must be, and it is hereby granted.