John O. SELDOMRIDGE

v.

Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare.

Civ. A. No. 29091.

United States District Court
E. D. Pennsylvania.

Dec. 30, 1964.

Ira I. Pechter, Philadelphia, Pa., for plaintiff.

Drew J. T. O'Keefe, U. S. Atty., Merna B. Marshall, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

HIGGINBOTHAM, District Judge.

Plaintiff Seldomridge again seeks review of the final decision of the Secretary of Health, Education and Welfare denying his application for the establishment of a disability freeze under § 216(i) of the Social Security Act, 42 U.S.C.A. § 416(i), and for monthly disability benefits under § 223 of the Act, 42 U.S.C.A. § 423.[1] Both plaintiff and defendant have moved for summary judgment.

As Seldomridge v. Ribicoff, 204 F. Supp. 707 (E.D.Pa.1962), this action was first reviewed and thereafter remanded by Judge Luongo, who concluded in accord with the Hearing Examiner's findings, that "[t]he evidence in this case reveals an impairment of *long lasting duration* * * *." Id. at 711. (Emphasis added.) Having found a lack of substantial evidence "to support the [Secretary's] ultimate finding that plaintiff is not precluded from engaging in 'light work'," Ibid., Judge Luongo remanded the record to the Secretary to adduce more evidence "as to the actual activities in which plaintiff can and cannot engage and as to his employment opportunities." Id., at 711.[2]

Thus, because of his specific findings of the "noted deficiencies of the record * * * on material points," and by reason of the findings which the Secretary "failed to make," and because the "primary evidentiary facts" were "legally insufficient," the learned District Judge could have then (1) instantly granted plaintiff's motion for summary judgment, or, (2) as he did in a proper exercise of discretion, given the Secretary an additional opportunity to bolster the record in efforts to meet the precise standard of substantiality which the Secretary had failed to meet.

■ As I view the present posture of this case, my review will be limited to ascertaining whether the Secretary, after having had a second chance, has filled these evidentiary gaps which Judge Luongo properly termed deficient.[3]

■ As the Court of Appeals of this Circuit has repeatedly emphasized, the test of disability consists of two parts: "(1) a determination of the extent of

---

1. Aug. 14, 1935, c. 531, Title II, §§ 216, 223, as amended.

2. Judge Luongo noted:

    "The difficulty lies not with the findings which the Secretary made, but with those which he *failed to make*. There is very little evidence and *virtually no findings* by the Secretary as to the actual activities in which plaintiff can and cannot engage and to his employment opportunities. The trend in recent cases is that to support a finding that a claimant is able to engage in substantial gainful activity there must be evidence in the record revealing the *economic realities* of the situation. The ultimate finding may not be based on speculation. Specific findings of primary facts in this respect are essential to support the ultimate facts found by the Secretary in this case, and the absence of findings renders the basis for his finding insufficient as a matter of law. * * *

    "Because of the above noted *deficiencies of the record* before us on these material points, we will remand the record to the Secretary, pursuant to the provisions of § 205(g) of the Act, 42 U.S.C.A. § 405(g), for additional evidence and findings and it is so ordered." 204 F.Supp. 707, 711, 712. (Emphasis added.)

3. If the matter had come to me originally, rather than on this remand, I might have granted plaintiff's motion for summary judgment because of the then lack of substantial evidence to support the Secretary's findings, but of course, I *now* have the advantage of "hindsight" in seeing that the Secretary even after the remand again failed to meet these "deficiencies of the record."

the applicant's physical or mental impairment, and (2) a determination of whether that impairment results in an inability to engage in any substantial gainful activity." Janek v. Celebrezze, 336 F.2d 828, 833 (3rd Cir. 1964). See also Stancavage v. Celebrezze, 323 F.2d 373 (3rd Cir. 1963); Farley v. Celebrezze, 315 F.2d 704 (3rd Cir. 1963); Hodgson v. Celebrezze, 312 F.2d 260 (3rd Cir. 1963); Klimaszewski v. Flemming, 176 F.Supp. 927, 931 (E.D.Pa. 1959); Kerner v. Flemming, 283 F.2d 916 (2d Cir. 1960).

As to the first test—plaintiff's physical impairment—the Secretary apparently concedes that Seldomridge has some partial impairment; and even if such a concession had not been made, I am in agreement with Judge Luongo's finding that "[t]he evidence in this case reveals an impairment of long lasting duration." 204 F.Supp. 707, 711.

The Hearing Examiner, on June 6, 1960, found that by "the weight of the substantial medical evidence * * * claimant is suffering from partial disabilities which, no doubt, handicap him in obtaining suitable gainful employment which may prevent him from engaging in his prior occupation or in other arduous work, * * *" (Tr. 14.) [4]

To cast this case in its proper posture for review, it is necessary to (1) review some of the medical evidence as to the extent of the disabilities in order to (2) decide if Seldomridge has an inability to engage in any substantial activity.

After having reviewed the evidence, I have concluded that plaintiff is entitled to summary judgment because the record demonstrates that he has "an inability to engage in any substantial gainful activity." Janek v. Celebrezze, supra, 336 F. 2d at p. 833.

I.

STANDARD OF REVIEW

Even a cursory review of this record demonstrates that before and after the remand, the Secretary consistently resolved every possible inference against the claimant—even though there was often substantial evidence to support the position of the claimant. In fact, the Secretary's representative took painstaking efforts to exert every possible argument against the claimant.[5] When one recognizes that the Social Security Act " * * * is a remedial statute and must be construed liberally," [6] such consistent administrative harshness causes one to have concern about the quality of justice for those numerous indigent claimants who cannot afford counsel. Also "in view of the severe restrictions as to attorney's fees," [7] there is a similar concern about the quality of justice which actually exists for those claimants who are readily able to pay for competent counsel.[8] In the instant matter, prior

---

4. The Hearing Examiner's Opinion of June 6, 1960, was affirmed by the Appeals Council by their denial of claimant's request for review. (Tr. 2).

5. As an example, see discussions of the ventilatory tests pp. 10–13, infra.

6. As Judge Biggs said in Klimaszewski v. Flemming, 176 F.Supp. 927, 932 (E.D. Pa.1959): "The statute must be given a reasonable interpretation. It is a remedial statute and must be construed liberally. It was not the intention of Congress to impose a test so severe as that required by the Secretary and to exact as a condition precedent to the maintenance of a claim the elimination of every possibility of gainful employment."

7. Butler v. Flemming, 288 F.2d 591, 593, n. 3 (5th Cir. 1961.)

8. Upon making appropriate reference to the opinion of Judge Friendly, one of the most esteemed scholars on federal administrative procedure, the Court of Appeals for this Circuit noted:

"Applicants for social security benefits are particularly in need of full appellant review of the facts of their cases. As Judge Friendly of the 2nd Circuit has pointed out, courts have no right to expect that parties in social security cases will 'normally have the assistance of counsel.' Indeed, as Judge Brown of the 5th Circuit has also suggested, *'assistance by counsel is virtually an act of professional public service in*

to the complaint filed in this court, Seldomridge was not represented by counsel at the bureau level, or in the appeals to the hearing examiner or to the Appeals Council.

■■■ Yet, if there is "substantial" evidence supporting each of two diametrically opposed conclusions, and if within that context any of the Secretary's representatives is inclined when given a choice to resolve every permissible inference against the claimant, legally, such is his prerogative for which he cannot be reversed—even if most fact finders would have readily reached the opposite result by sustaining the claim. This is his

prerogative by reason of a presumed administrative expertise, and it is within such a limited scope of judicial review that I hereafter discuss and weigh the evidence.[9]

## II.

## EXTENT OF MEDICAL DISABILITY

Plaintiff's application for benefits alleges an inability commencing January 16, 1959, because of "heart trouble, kidneys and lungs."

Plaintiff, a single male, was born in either 1900 or 1902. While there is evidence in the record establishing several ailments,[10] the major disabilities appear

---

*view of the severe restrictions as to attorneys' fees.'* Analogies between appellants in social security cases with those before other administrative agencies are thus a trifle strained." Farley v. Celebrezze, 315 F.2d 704, 705–706 (1963). (Emphasis added.) Under the present regulation, it is a criminal offense for counsel to charge a fee of more than $50.00 without having received the prior approval of the Social Security Administration for his services and appeals within the several administrative levels. Under the prior regulation, counsel could not charge more than $10.00 unless he had the approval of the Social Security Administration. See Code of Federal Regulation, 403.713(d) (2); the present regulation provides:

"* * * That no such approval shall be required for charging or receiving a fee for such services in a total amount not greater than the following: Representation before the Bureau only, $20; representation before a hearing examiner and/or the Appeals Council only, $30; representation before the Bureau and a hearing examiner and/or the Appeals Council, $50. This limitation shall be applicable whether the fee is paid by a party to the proceeding or by someone else." Code of Federal Regulations, 404, 976, 25 Federal Register, 1685 (Feb. 26, 1960.) Section 406 of Title 42, provides that any one who shall "knowingly charge or collect, directly or indirectly, any fee in excess of the maximum fee * * * shall be deemed guilty of a misdemeanor and, upon conviction thereof, shall for each offense be punished by a fine not exceeding $500 or by imprisonment not exceeding one year, or both." Thus, even for a financially solvent individual, the coun-

sel of his choice is initially faced with the dilemma that unless he becomes involved in additional paperwork by filing a petition and establishing "good cause," the maximum fee may be either $20, or $30, or $50. Accordingly, it is not surprising that at the administrative level on appeal from the Bureau's determinations claimants will often not have counsel.

9. Of course the Court is obligated to make more than a cursory examination of the record so that there can be a proper determination of the "question for decision * * * whether there is substantial evidence in the record to support the decision of the Appeals Council that the claimant is not precluded from engaging in any substantial gainful activity. It is the duty of the court to look to the record as a whole. Boyd v. Folsom, 3 Cir., 1958, 257 F.2d 778, at page 781, citing Universal Camera Corp. v. National Labor Relations Board, 1951, 340 U.S. 474, 490, 71 S.Ct. 456, 95 L.Ed. 456." Klimaszewski v. Flemming, supra, 176 F.Supp. at 930–931.

10. "* * * an enlarged heart (Tr. 122); a low oxygen saturation (Tr. 121); arteriosclerotic heart disease, * * * the electrocardiogram shows first stage heart block in myocardial abnormality (Diagnosis of the Veterans Administration); hypertensive heart disease as found by St. Lukes & Children's Medical Center, and a coronary heart disease as found by the physician chosen by the Secretary for the examination." (Tr. 268.) The Appeals Council noted that "there is evidence of emphysema since 1964, a suggestion of brochiectasis beginning in 1953 [and that the] "claimant has had high blood pressure for a considerable number of years." (Tr. 118, 112.)

to be "pulmonary and cardiac impairments."

Plaintiff filed his application for social security benefits on July 20, 1959. Thus, as the Appeals Council noted, he must "establish that a disability * * * began on or before July 20, 1959." (Tr. 116.)

On July 5, 1962, thus subsequent to Judge Luongo's remand, Seldomridge was admitted as a patient to the Henry R. Landis State Hospital with active moderately advanced pulmonary tuberculosis. (Tr. 259–260.) He was admitted as a transferee from an earlier admission to the Veterans Administration Hospital. As of the close of the medical records in this case, there was no evidence that Seldomridge had been discharged, and the Appeals Council found that at Landis State Hospital the "duration of hospitalization was indefinite." (Tr. 115.) The representative of Landis State Hospital in his most recent communication of record had stated the following:

"What is the claimant's present condition?

"The claimant is considered to be chronically, not acutely ill.

*    *    *    *    *    *

"What is the probable duration of hospitalization?

"This is difficult to forecast * *. The hospital policy is to keep patients at least one year after the last positive smear or culture. The last positive sputum culture was in 7/62 (reported in 9/62). Therefore, claimant should be confined at least until 7/63, assuming subsequent cultures are negative. If they are positive, you will be confined that much longer." (Tr. 266.)

A. *Evidence Supporting Plaintiff's Claim of Medical Disability*

The substantial evidence of record which supported Seldomridge's claim

that he was totally disabled as of July, 1959, is as follows:

1. "The claimant's significant medical history began in 1953 when with a diagnosis of tuberculosis by the Philadelphia City Chest Council (Exhibit AC–2C, p. 1) and the Veterans Administration (Exhibit AC–25, p. 28), he was admitted to the White Haven Sanitorium on January 23, 1953." (Second Decision of the Appeals Council, Tr. 111.)

2. On October 4, 1953, he was discharged with a diagnosis of "moderately advanced pulmonary tuberculosis, and apparently arrested, negative sputum." (Tr. 111.)

3. After various jobs as a shipfitter in 1955, for Bethlehem Steel, he began work as a shipfitter for New York Shipbuilding Corporation, Camden, New Jersey, on May 1, 1958. (Tr. 111.)

4. In December, 1958, "He began missing work * * * [and] was carried in a medical status beginning January 9, 1959. He *performed no work after that date* and on August 1, 1960, he was discharged." (Tr. 111) (Emphasis added.)

5. On February 7, 1959, a medical certificate was filed with New York Shipbuilding Corporation by Dr. David Cohen "describing the claimant's illness as 'virus infection, acute bronchitis'." (Tr. 111.)

6. "A claim was filed under New Jersey Temporary Disability Law (Exhibit AC–24) and the claimant received payment of $35.00 a week from February 18, 1959, to July 23, 1959." (Tr. 112.)

7. "On March 15, 1959, claimant was admitted to St. Lukes and Children's Medical Center with a 'history of shortness of breath, dizziness, and palpitation, all of two months' duration'." (Tr. 112.)

8. On April 2, 1959, claimant was examined by the Veterans Administra-

tion resulting in a "diagnosis of pulmonary tuberculosis, and apparently inactive; pulmonary emphysema, advanced; cardiac failure under treatment; recurrent renal lithiasis; general arteriosclerosis, and general debility. Complaints were of shortness of breath, fatigue, suffocation, pains to the upper chest, and coughs." (Tr. 112.) As the result of an x-ray study, "the impression was suggestion of left renal calculus and evidence of *old minimum re-infection tuberculosis of the right upper lobe of questionable activity.*" (Ibid.) (Emphasis added.)

9. As a result of x-ray studies at the Burge Tuberculosis Clinic, on *April 24, 1959*, they found "photofluorograph of chest of Mr. John Seldomridge, 1244 Ridge Avenue, revealed increased density in the right upper lobe. *Could be due to reinfection type of tuberculosis.* Suggest further study. The aortic shadow is widened. Suggest a cardiovascular study." (Exhibit AC–5, Tr. 108.) (Emphasis added.)

10. "March 18, 1959, examination through Glover Clinic in St. Lukes Hospital wherein it was noted 'culture examinations appear to be normal, but I would certainly watch Mr. Seldomridge. I believe the lesion in the right upper lobe is *an old arrested TB* but he should be followed should it start breaking down." (Tr. 176, 177.) (Emphasis added.)

11. Plaintiff's continued deterioration resulting in permanent hospital confinement in 1962 with active moderately advanced tuberculosis (Tr. 259–260); thus a corroboration of the Veterans Administration's suspicion that the questionable activity of TB reinfection was in fact taking place in 1959.

B. *Evidence Favorable to the Secretary's Findings*

In contrast to the above, the Secretary basically relied on the following medical evidence to disallow Seldomridge's claim of disability.

(1) The Ventilatory Studies:

In behalf of the Secretary, ventilatory studies were conducted on October 29, 1959, by Dr. J. W. Savacool. These ventilatory studies pertaining to breathing capacity noted that " * * * The vital capacity was 109% of predicted normal, the three second vital capacity was 87% of predicted normal, and the maximum breathing capacity was 93% of predicted normal." (Tr. 119.) The claimant strenuously challenged these findings on the ground that the ventilatory tests actually were never performed because Dr. Savacool's machine was broken. (Tr. 54–56, 119.) [11]

Approximately three years later (July 1962), when claimant was confined in Landis State Hospital for active tuberculosis, ventilatory pulmonary function studies were again performed with the results indicating that he had a "vital capacity of 3320 ml. against a predicted norm of 3580 ml. [92%]. The three seconds vital capacity was 90% against a predicted normal of 95% and the maximum breathing capacity was 52 liters per minute against a predicted capacity of 93 liters per minute [55%]." (Tr. 119.)

Indicative of what appears to me to be the Secretary's inclination to resolve every permissible medical inference against the claimant is the manner in which the Secretary has handled the above mentioned ventilatory tests. In the Appeals Council's opinion written after the remand, there is substantial discussion of the ventilatory tests with the implication that claimant's performance on these tests was very persuasive evidence to the Secretary in establishing that the claimant was not totally or substantially disabled as of 1959. Yet, on the same day this Seldomridge matter

---

11. Claimant's testimony as to Dr. Savacool's examination was as follows: "The machine was broken and he said to another doctor that if you have two things and they don't agree you can sort of figure them in and he said that he would figure them in because the machine wasn't working." (Tr. 55.).

was argued, the Secretary took a totally contrary position as to the importance of ventilatory tests in Anthony Yeckabofsky v. Anthony J. Celebrezze, Civil Action No. 28177.[12] In Seldomridge, the Appeals Council suggested that the claimant's performance on the 1959 and 1962 ventilatory tests was a significant criterion in establishing that in 1959 Seldomridge was not substantially disabled:

> "Dr. Cander's examination [in 1962] although indicating a low oxygen saturation, serves primarily to demonstrate by the greatly increased respiration rate and reduced maximum breathing capacity that the claimant's *condition was worsened subsequent to the period in issue.*" [13] (Tr. 121.)

Thus the implication left by the Appeals Council is that the 1959 ventilatory studies are of value in establishing that at that time, Seldomridge had no disability.

Yet in Yeckabofsky v. Celebrezze, supra, *where the ventilatory test results were somewhat more favorable to the claimant's position,* the Secretary argued that such ventilatory tests were of little value in determining disability. In fact, in Yeckabofsky the Appeals Council concluded that:

> " * * * the use of ventilatory tests in determining the degree of pulmonary impairment should be accorded limited significance. This is pointed out in a work entitled Chronic Bronchitis, Emphysema and Cor Pulmonale by D. H. Stuart-Harris, M.D., Sir George Franklin, Professor of Medicine at the University of Sheffield, and T. Hanley, M.D., Lecturer in Medicine at the same

University (1957), p. 86, wherein in discussing ventilation studies, it is stated, ' * * * the test appears to be subject to a relatively large error imposed by the necessity for cooperation of the patient and is not highly reproducible.'

"Dr. Hurley L. Motley, in the summary of his article 'The Pneumoconiosis,' published in Clinical Cariopulmonary Physiology, (Supra, pp. 857–8), stated:

> " 'The extent of the impairment of pulmonary function from inhalation of silica or other mineral dust as silicates, * * * coal, * * * or chalk requires pulmonary function measurements with adequate tests to evaluate (1) the ventilatory status, (2) the transport of oxygen and carbon dioxide in the lungs and (3) pulmonary blood flow. *Single test of lung function or tests of only one aspect are unsatisfactory.* The presence of x-ray changes constitutes no cause for removing the worker from the job as demonstrated in the 98 diotomite [earth consisting of diatom or the siliceous remains] workers studied. No further progression may occur with improved dust control in the plant.' [Italics supplied by Appeals Council.]" (Tr. 138 –139.)

It is of more than passing interest that in Seldomridge, where a test result in ventilatory studies was possibly disadvantageous to the claimant's position, the Government did not cite the aforementioned treatises, which it found so per-

---

12. As a matter of coincidence, Yeckobofsky was listed on my argument list on the same day as Seldomridge. Yeckabofsky was reargued pursuant to a prior remand by Judge J. Cullen Ganey as Yeckabofsky v. Ribicoff, 206 F.Supp. 452 (E.D.Pa. 1962). On September 30, 1964, I granted summary judgment on behalf of the claimant Yeckobofsky, from which no appeal was taken.

13. Prior to the remand, the Hearing Examiner also relied substantially on Dr. Savacool's ventilatory studies. (Tr. 12–14.)

suasive as to permit disregarding ventilatory studies in Yeckabofsky.[14]

### (2) Claimant's History at Philadelphia Department of Public Health:

From 1952 to 1962, Seldomridge attended the Tuberculosis Case Registry of the Philadelphia Department of Public Health where a series of x-rays were taken at intervals. A diagnosis of moderately advanced pulmonary tuberculosis —active was made when he was first seen on May 22, 1952. After a period of hospitalization in 1954, the City Health Department diagnosis was moderately advanced pulmonary tuberculosis—inactive. Seldomridge was not seen at the clinic from 1955 until December 29, 1958. At this latter time the diagnosis was moderately advanced pulmonary tuberculosis—inactive. (Tr. 246–247.)

On December 21, 1959, he was again seen at the Health Clinic when the diagnosis was that he continued to "show moderately advanced fibro-calcific tuberculosis in the right upper lobe. There is no evidence of any active tuberculosis at this time." He was next seen at the clinic on June 4, 1962, at which time the diagnosis was revised to moderately advanced pulmonary tuberculosis—active.

Thus, upon considering plaintiff's tuberculosis history prior to and subsequent to July 1959, and his complaints of breathlessness and inability to work, the Appeals Council could have sustained his claim on the basis of the following: The reports of the Veterans Administration that he had an old minimum reinfection tuberculosis of the right upper lobe of questionable activity with shortness of breath, fatigue, suffocation, pains to the upper chest, and coughs; related reports of Dr. Cohen; the findings of the Administrators of the New Jersey State Temporary Disability law; and the report of the Burge Tuberculosis Clinic. But in the exercise of their fact finding discretion, the Appeals Council found the contrary report of the City of Philadelphia Clinic "to be more compelling." (Tr. 121.)

### III.

### POSSIBILITY OF GAINFUL EMPLOYMENT FOR INDIVIDUALS WITH SUCH DISABILITIES

Thus, taking the evidence most favorable to the defendant, the medical evidence establishes that in July 1959, Seldomridge was either 57 or 59 years old, and that he had a history of emphysema, arteriosclerotic disease and high blood pressure; in addition, he had a substantial extended history of prior active and inactive pulmonary tuberculosis and, as of July 1959, apparently there was a disagreement among medical experts as to whether his prior active tuberculosis was becoming reactivated.

■ Claimant could never return to his former vigorous duties as a shipfitter or to other tasks which require similar strenuous exertion. The inquiry therefore becomes—with such permanent partial disability, what were the "economic realities" of obtaining employment in this area for persons with the combination of disabilities which plaintiff [15] had.

---

14. As to ventilatory studies, Judge Ganey has said: "We think the ventilation tests are too inconclusive to base a finding of nondisability. By means of artificial respiration a dead man could be made to show good pulmonary ventilatory capacity." Yeckabofsky v. Ribicoff, 206 F. Supp. 452, 455 (E.D.Pa.1962.)

15. We must be mindful of Chief Judge Biggs' wise caveat that "[t]he word 'any' [gainful employment activity] must be read in the light of what is reasonably possible, not what is conceivable." Kli-

maszewski v. Flemming, 176 F.Supp. 927, 932 (E.D.Pa.1959).
And as Judge Joseph S. Lord, III, has so aptly stated:
"* * * [t]he rule of this circuit is the rule of realism. It is not enough to suggest that a man might sell candy in a candy store or operate an elevator or become a watchman or perform any one of the almost infinite number of light jobs that can be conjured up. There must be a realistic showing not only that the plaintiff could do these jobs but also that there existed a rea-

■ The Secretary has not established that employment opportunities are available merely because his doctor does not find the tuberculosis active; rather, under this test, the issue is whether employers would hire men when there is a medical disagreement about whether their tuberculosis has been reactivated. As the Court of Appeals has held:

"Thus in the case of an employee who can no longer perform the work he used to do but is not totally disabled the question is what can he do by way of any gainful employment. Kerner v. Flemming, 283 F.2d 916 (2 Cir. 1960). The words 'any substantial gainful activity' must be read in the light of what is reasonably possible and not what is conceivable. Hodgson v. Celebrezze, supra. Mere *theoretical ability* to engage in substantial gainful activity is not enough if no *reasonable opportunity* for this is *available*. Roberson v. Ribicoff, 299 F.2d 761, 763 (6 Cir. 1962)." (Emphasis added.) Janek v. Celebrezze, supra, 336 F.2d at p. 833.

To fill the gap between "theoretical ability" and "reasonable opportunity * * available," the Secretary relied exclusively on and made extensive citations from the Dictionary of Occupational Titles and the U. S. Census of Population: 1960. Detailed Characteristics of Penn-

sylvania. (Tr. 125–127.) As has apparently been his consistent practice with all claimants, the Secretary made his findings as to the availability of such employment opportunities in this area without ever advising plaintiff that the Secretary would rely on such documents or would have such documents formally admitted into evidence.[16] I listed the matter for reargument and required the relevant documents to be included in the instant record for the opportunity to read the "substantial evidence" which the Secretary claims demonstrates the availability of such employment opportunities for individuals who have a disability of the type or similar to the type which plaintiff had.

■ The Dictionary of Occupational Titles makes extensive reference to skills which are required in light industry jobs. *The U. S. Census of Population: 1960* is interesting reading as to the number of persons who are employed in various types of Pennsylvania industries. But none of the data is relevant to determine whether industries in Pennsylvania are hiring men in their late fifties who have disabilities similar to those which plaintiff had. Thus, at the oral argument the United States Attorney was pointedly asked the following:

"THE COURT: * * * What is the basis for my making the infer-

sonable opportunity for the plaintiff to engage in substantial gainful employment." Fedor v. Celebrezze, 218 F. Supp. 667, 668 (E.D.Pa.1963.)

16. After extended correspondence, the Chairman of the Appeals Council· finally advised plaintiff's counsel on February 7, 1963, that the Appeals Council had "obtained additional evidence which we now propose to introduce into the record as exhibits. Before these items are received into the record, you will have an opportunity to examine and comment thereon. They will be available for your inspection at the Social Security Administration, District Office * * * Philadelphia, Pa. * * * Any objections you may have with regard to the evidence should be made in writing and sent to the Appeals Council." Yet, though the Secre-

tary was supposedly making available to plaintiff's counsel the documents which the Secretary said he would 'introduce into the record as exhibits,' he nevertheless failed to advise plaintiff of the key documents on employment opportunities (Dictionary of Occupational Titles and the Bureau of Census Reports), which the Secretary later relied on as decisive authority for his findings on employment opportunities. (Tr. 131, 132, 135, 136, 138, 139, 140, 141, 145, 146.)
My colleague, Judge Harold K. Wood, has held that the Secretary's "* * * use of extra-record material *without notice* to the affected party is contrary to the Administrative Procedure Act, 5 U.S.C.A. § 1006(d) and violates due process." Sosna v. Celebrezze, (E.D.Pa.1964), 234 F.Supp. 289.

ence, or for even more, the Appeals Council making the inference that Pennsylvania industries are hiring men in their late fifties who had the limited disability which the Appeals Council found that he had. What documentation do you have of that?" (Tr. Oral Argument 5–6).

To which question the United States Attorney replied with appropriate candor:

"None that I can find." (Tr.Oral Argument 6).

Neither can the Court find such evidence. Since there is no evidence to suggest "what employment opportunities are there for a man who can do only what applicant can do?" Kerner v. Flemming, supra, 283 F.2d at 921, and since there has been no "realistic showing * * * that * * * there [exists] a reasonable *opportunity* for the plaintiff to engage in substantial gainful employment" Fedor v. Celebrezze, 218 F.Supp. 667, 668 (E.D.Pa.1963), and since there is not a scintilla of evidence to suggest "whether employers in competitive industry would hire claimant to do such work" Secoolish v. Celebrezze, 216 F.Supp. 935, 939 (D.N. J.1963), the decision of the Secretary must be reversed, and summary judgment granted for plaintiff.[17]

17. In a somewhat similar case (unpublished) where there had also been a prior remand by this court, my colleague, Judge William H. Kirkpatrick, granted summary judgment to the plaintiff claimant and noted:

"The burden of proof in the sense of risk of nonpersuasion is, of course, in cases like this, upon the plaintiff. 'However, it does not follow that the court is bound to sustain a denial of disability benefits where the applicant has raised a serious question and the evidence affords no sufficient basis for the Secretary's negative answer.' Kerner v. Flemming, 283 F.2d 916, 922. This plaintiff's evidence certainly raised a 'serious question' and it was thereupon incumbent upon the Secretary to produce substantial evidence in support of his denial of benefits.

\*   \*   \*   \*   \*

Under these circumstances, I must conclude that there is no substantial evidence to support the Secretary's finding that the plaintiff could engage in substantial, gainful employment as of September 30, 1957. It is not the function of this court to determine when this disability began. I do find that he was unable to engage in substantial, gainful activities on and before September 30, 1957." (Thorn v. Celebrezze, (E.D.Pa.1963), Civil Action No. 30785, Sept. 2, 1964.

The decisions of the Courts in this Circuit appear to be in accord with the numerous decisions in other Circuits. As an example, a compilation of the September-October-November 1964 Federal Supplement (Vol. 231–234), indicates that of the 28 cases reported, the Social Security Administration was reversed in at least seventy-five percent of the cases, and ninety percent of those reversals was for lack of substantial evidence to support the Secretary's findings, just as in the instant case I have found a lack of substantial evidence. See: Bryant v. Celebrezze, 231 F.Supp. 524 (W.D.S.C. 1964) ; Kuykendall v. Celebrezze, 231 F. Supp. 890 (W.D.Ark.1964) ; Sabbagha v. Celebrezze, 231 F.Supp. 440 (E.D. S.C.1964) ; Turner v. Celebrezze, 231 F.Supp. 869 (D.Ore.1964) ; Bagwell v. Celebrezze, 232 F.Supp. 989 (W.D.S.C. 1964) ; Blankenship v Celebrezze, 232 F. Supp. 229 (S.D.W.Va.1964) ; Brill v. Celebrezze, 232 F.Supp. 296 (E.D.N.Y. 1964) ; Ferguson v Celebrezze, 232 F. Supp. 952 (W.D.S.C.1964) ; Ferrell v. Celebrezze, 232 F.Supp. 281 (S.D.Tex. 1964) ; Hodges v. Celebrezze, 232 F. Supp. 419 (W.D.Ark.1964) ; Johnson v. Celebrezze, 232 F.Supp. 406 (D.N.D. 1964) ; Cook v. Celebrezze, 233 F.Supp. 295 (E.D.S.C.1964) ; Davis v. Celebrezze, 233 F.Supp. 292 (E.D.S.C.1964) ; Hanna v. Celebrezze, 233 F.Supp. 239 (W.D. Ark.1964) ; Hill v. Celebrezze, 233 F. Supp. 298 (E.D.S.C.1964) ; McAlister v. Celebrezze, 233 F.Supp. 694 (W.D.S.C. 1964) ; Miles v. Celebrezze, 233 F.Supp. 767 (W.D.S.C.1964) ; Simmons v. Celebrezze, 233 F.Supp. 93 (E.D.S.C.1964) ; Bates v. Celebrezze, 234 F.Supp. 349 (W. D.S.C.1964). Cf. Sosna v. Celebrezze. 234 F.Supp. 289 (E.D.Pa.1964).